STATE EX REL. ZABEL, District Attorney, Plaintiff and Respondent, vs. HANNAN and another, as the STATE BOARD OF CONTROL, Defendants and Appellants: ROSENBERG, Interpleaded Defendant and Appellant.

*September 13—October 8, 1935.*

*William H. Spohn* of Madison, for the appellants John J. Hannan and Katherine Sullivan, constituting the Board of Control of the State of Wisconsin.

*Jos. A. Padway* of Milwaukee, for the appellant Isaac J. Rosenberg.

For the respondent there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Herman Mosher,* deputy district attorney of Milwaukee county, and oral argument by *Mr. Messerschmidt* and *Mr. Mosher.*

NELSON, J.   Isaac J. Rosenberg, on May 13, 1933, was convicted by the municipal court of Milwaukee county on four counts of an information which charged him with having theretofore published false statements of the condition of the Liberty State Bank of Milwaukee, in violation of sec. 221.17 of the Wisconsin Statutes. He was sentenced on each count to a general or indeterminate term of from one to five years in the state prison, the sentences to run concurrently. GUSTAVE G. GEHRZ, circuit judge, presided as judge of the municipal court at said trial. William A. Zabel, district attorney of Milwaukee county, prosecuted the action. The crimes of which Rosenberg was convicted constituted his first offense. After his conviction had been affirmed by this court (*Rosenberg v. State,* 212 Wis. 434, 249 N. W. 541), and after a futile attempt had been made by him to have the supreme court of the United States allow an appeal to that court, he began to serve his sentence. After having been imprisoned for more than a year, he applied to the State Board of Control, hereafter called the board, for a parole, pursuant to the provisions of sec. 57.06. That application was dated October 19, 1934, and was made on a form supplied by the board. In that application Rosenberg stated:

"I was sentenced to 4 terms, 1–5 years concur. by GUSTAVE G. GEHRZ, judge of the municipal court of Milwaukee county.

"I was prosecuted by Geo. A. Bowman, district attorney."

Thereafter, on November 1, 1934, the board mailed to Geo. A. Bowman, Milwaukee, Wisconsin, written notice of Rosenberg's application, and that the matter would be heard

by the board at the office of the warden of the state prison at Waupun on November 19, 1934, at 10 o'clock a. m., or as soon thereafter as the board could reach the matter. The notice concluded as follows:

"Any reasons you may submit to said board, either in writing or verbally, why said parole should or should not be granted to said applicant, will be duly considered. All communications should be addressed to the State Board of Control, c/o State Prison, Waupun, Wisconsin."

No written notice of said application was mailed to William A. Zabel, the district attorney who participated in the trial of Rosenberg. GUSTAVE G. GEHRZ responded to a similar notice sent him by writing a letter to Hon. ALBERT G. SCHMEDEMAN, then governor of Wisconsin, in which he vigorously opposed the granting of a parole to Rosenberg at that time. Although William A. Zabel was given no written notice of the application for parole, he was informed of its pendency through the press. Acting upon such information, he wrote a letter to the board in which he briefly expressed his strenuous objection to the granting of a parole. Among other things he said:

"I have not, up to this date, received a notice of such application, but take this opportunity to oppose the granting of same, without the usual notice having been served, as I handled the final disposition of this matter when it came into court."

Rosenberg's application for parole was considered by the board on November 20, 1934, and unconditionally denied. On April 24, 1935, Rosenberg again applied to the board for a parole. In his second application he again stated that he was prosecuted by Geo. A. Bowman, district attorney. The board again sent written notice of the application to Geo. A. Bowman, which informed him that the application would be heard by the board at the office of the warden of the Wiscon-

sin state prison at Waupun on May 20, 1935, at 10 o'clock a. m., and concluded in the same manner as the first notice hereinbefore recited. No written notice of that application was sent to William A. Zabel. According to the minutes of the board returned to the circuit court, the board met at the Wisconsin state prison to consider applications for parole. The following is a copy of the relevant minutes of the board:

"The following applicants for parole appeared before the board, . . . the paroles being subject to executive approval.

. . .

"Isaac J. Rosenberg, paroled."

From the order for parole, it appears that the principal consideration which induced the board to act favorably upon the application was the belief that Rosenberg would be able to render valuable aid and assistance in the liquidation of the Liberty State Bank of Milwaukee to the benefit of depositors and other creditors of the bank. The governor approved the parole.

The question for decision is whether the board exceeded its authority in paroling Rosenberg without having given William A. Zabel, the district attorney who participated in the trial of the prisoner, ten days' written notice.

The only statute which needs to be considered is sec. 57.06. So much of that statute as requires present consideration is as follows:

"57.06 *Paroles from state prison and Milwaukee house of correction.* (1) The board of control, with the approval of the governor, may, upon ten days' written notice to the district attorney and judge who participated in the trial of the prisoner, parole any prisoner convicted of a felony and imprisoned in the state prison or in the house of correction of Milwaukee county . . . who if he is a first offender and is sentenced for an indeterminate term, shall have served the minimum for which he was sentenced not deducting any allowance for time for good behavior."

It is clear that the legislature intended to authorize the board, with the approval of the governor, upon ten days' written notice to the district attorney and judge who participated in the trial of the prisoner, to parole any prisoner convicted of a felony and imprisoned in the state prison or in the house of correction of Milwaukee county. Rosenberg was a first offender. He had been sentenced for an indeterminate term and had served the minimum for which he was sentenced, not deducting any allowance for time for good behavior. He was therefore eligible for parole in so far as the prerequisite statutory requirements were concerned, but the board failed to give to the district attorney who participated in the trial the written notice required by sec. 57.06.

It is not only not contended by the appellants that the board had authority to grant a parole without giving to the district attorney who participated in the trial of the prisoner ten days' written notice, but it is conceded that the statute requires that the ten days' written notice be given to him.

In the brief of the board it is said:

"It is a fair summary of the statute to say that the legislature intended to confer upon the Board of Control an unlimited discretion in regard to granting paroles after a prisoner had served a minimum sentence, but to provide that such discretion be exercised only with the approval of the governor, and only if notice were given to the judge and district attorney who tried the case."

It is clear that the purpose of requiring written notice to the trial judge and to the district attorney in a parole matter involving one sentenced to the state prison or to the house of correction of Milwaukee county is to give each of them an opportunity to express his views to the end that the board may have the benefit of the judgment of the judge and the district attorney who participated in the trial of the prisoner, as to the wisdom or advisability of paroling the prisoner. Ordinarily, either the judge or the district attorney, or both of

them, may have had some acquaintance with the prisoner or some knowledge or information concerning his former life, attitudes, habits, associations, and characteristics, of which the board may have no knowledge or information, and of which it should be informed before determining whether the prisoner is sufficiently reformed to permit him again to be at large in society. That the legislature deemed the information which notice to the district attorney might elicit, important, though not controlling, in the case of one imprisoned in, the state prison or house of correction of Milwaukee county, cannot be denied. The legislature apparently did not deem it important that the trial judge or the district attorney be given notice before paroling prisoners from other penal institutions, because as to such paroles, no notice to the trial judge or to the district attorney is required. Sec. 57.07 provides in part:

"57.07 *Paroles from other penal institutions.* (1) The state board of control may parole any inmate in the state reformatory or industrial home for women whenever suitable employment has been secured for such inmate, and his past conduct for a reasonable time has satisfied said board that he will be lawabiding, temperate, honest, and industrious."

It is our conclusion that the board had no authority to parole Rosenberg from the state prison without giving ten days' written notice to Mr. Zabel, the district attorney who participated in the trial.

It is, of course, apparent that the board intended fully to comply with the statute as to notice, but inadvertently sent the notice, to which William A. Zabel was entitled, to Geo. A. Bowman, his immediate predecessor in office. This all occurred as a result of the failure of Rosenberg correctly to state the name of the district attorney who prosecuted him. The notice was no doubt sent out by a clerk, charged with that duty, who excusedly acted upon the information contained in Rosenberg's application for parole. Whatever the

fact may be, the notice to Bowman cannot be held to be a written notice to Zabel or to be a compliance with the statute.

But the appellants contend that since the purpose of the statute is plain, and that since Zabel was admittedly informed of Rosenberg's first application for parole, took notice of it, acted upon it, and wrote a letter to the Board of Control in which he strenuously opposed the granting of a parole, the purpose of the statute was fully subserved, and it should be held that he waived written notice.

The argument would be much more persuasive if the board had acted favorably upon the application then pending before it. The board, however, unconditionally denied it, thereby, under its procedure, ending the proceeding, if it may be called such, which was initiated by Rosenberg's first application.

It is further contended that since Mr. Zabel once expressed his views prior to the time that the board considered the first application of Rosenberg, the board was fully informed as to his views and judgment, and it was futile and therefore unnecessary for it to give him notice of the second or any subsequent application for parole. We think the contention unsound. While the statute is silent as to just how the board shall proceed when a second or subsequent application for parole is made (the first application having been unconditionally denied), the board has adopted a procedure which, upon denial of an application for parole, requires a new application to be made and written notice to the judge and to the district attorney who participated in the trial. Such a notice, in case of a second or subsequent application, cannot be said to be futile. A district attorney or a judge may well be opposed to the granting of a parole when application is first made and later on be in favor of it, because of a change of attitude on the part of the prisoner or some other consideration, evidenced by his having made restitution in the meantime, or in other ways having evidenced his penitence and the probability

of his being able to go straight if again permitted to live without prison walls. It is our opinion that the legislature intended that when the board is about to consider paroling a prisoner from the state prison it should have the benefit of the reasonably contemporaneous opinion of both the judge and the district attorney who participated in the trial as to the wisdom of such action. Such apparently was the interpretation given the statute by the board, for when Rosenberg made his second application the board notified both Judge GEHRZ and Geo. A. Bowman, acting upon the information that the latter was the district attorney who had prosecuted Rosenberg.

It seems clear that while the board, with the approval of the governor, may exercise its discretion and parole a prisoner from the state prison or the house of correction of Milwaukee county, regardless of the attitude or stand taken by the trial judge or district attorney, it may do so only upon or after ten days' written notice has been given to the judge and to the district attorney.

*By the Court.*—Judgment affirmed.

ROSENBERRY, C. J. (*dissenting*). If the decision in this case rested squarely upon the proposition that the statute in question required a written notice to be given to William A. Zabel, who as district attorney participated in the trial of the defendant, I should not dissent therefrom, although in my view it is a strict construction of the statute, and I should prefer to see it held that where the district attorney in fact had knowledge and acted upon that knowledge and did all that he could do had written notice been given him, then mere failure to give a written notice did not invalidate the action of the Board of Control. Whether one construction or the other should be adopted is a debatable question, and upon that point I should feel myself concluded by the decision of the court and should not dissent.

In the decision of the court, however, the effect of the knowledge which William A. Zabel had and the action which he took is sought to be avoided upon the ground that—

"The board has adopted a procedure which, upon denial of an application for parole, requires a new application to be made and written notice to the judge and to the district attorney who participated in the trial. . . . It is our opinion that the legislature intended that when the board is about to consider paroling a prisoner from the state prison it should have the benefit of the reasonably contemporaneous opinion of both the judge and the district attorney who participated in the trial as to the wisdom of such action. Such apparently was the interpretation given the statute by the board, for when Rosenberg made his second application the board notified both Judge GEHRZ and Geo. A. Bowman, acting upon the information that the latter was the district attorney who had prosecuted Rosenberg."

If by its decision the court intends to say that when an administrative tribunal such as the Board of Control for the orderly conduct of its business adopts a particular method of procedure, none being required or authorized by the statute, it thereby invests itself with a judicial or *quasi*-judicial quality which imposes the limitations of the exercise of the judicial process upon it, I must dissent. If it was merely held that the notice to the trial judge and the district attorney who tried the case must have some reasonable relation in time to the action of the board in the granting of the parole, I should agree. However, under such a rule I should be of the opinion that the time which elapsed between the giving of the notice and the receipt of the protest of Mr. Zabel did not deprive the board of the right to act six months later, that being a reasonable time. In my opinion any action taken by an administrative tribunal respecting the method of performing its duties in the absence of a statute requiring or authorizing it to adopt rules and procedure can have no effect upon the validity of its administrative determinations. There is always a tendency to impose upon the administrative process

the limitations and restrictions involved in the exercise of the judicial process. I think that that tendency should be resisted at every point because the imposition of the limitations and restrictions of the judicial process upon the administrative process is harmful, illogical, and likely so to impede administrative action as in many instances to defeat its beneficent effects.

I must therefore dissent from so much of the decision as holds that the fact that there was a first hearing or proceeding which required a new notice before there could be a second hearing or proceeding. The Board of Control has made no practical construction of the statute because there is no statute relating to procedure to be interpreted. On its own motion, without statutory requirement, it laid down certain procedure for the orderly conduct of its business. The procedure so established did not interfere with the board proceeding in any other lawful way if it so desired.

I am authorized to say that Mr. Justice WICKHEM concurs in this dissent.