In re the Commitment of Goodson:

Philip Arreola, Chief of Police for the City of Milwaukee, and the City of Milwaukee, Appellants-Cross Respondents,

E. Michael McCann, District Attorney of Milwaukee County, Co-Appellant-Cross Respondent,

v.

State of Wisconsin, Plaintiff-Respondent-Cross Respondent,

Richard Lee Goodson, Defendant-Respondent-Cross Appellant.

Court of Appeals

*No. 95–0664. Submitted on briefs December 12, 1995.—Decided January 18, 1996.*

(Also reported in 544 N.W.2d 611.)

428

For the appellants-cross respondents the cause was submitted on the briefs of *Grant F. Langley*, city attorney of Milwaukee, with *Linda Uliss Burke*, assistant city attorney.

For the co-appellant-cross respondent the cause was submitted on the brief of *E. Michael McCann*, district attorney of Milwaukee County, with *Jane Vinopal*, assistant district attorney.

For the plaintiff-respondent-cross respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Sally L. Wellman,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. The City of Milwaukee and its chief of police, Philip Arreola, and E. Michael McCann, district attorney of Milwaukee County, appeal from a dispositional order of the Dodge County Circuit Court placing Robert L. Goodson, a person found to be "sexually violent" under the Sexual Predator Law, ch. 980, STATS., on supervised release in Milwaukee County.[1] They argue that the order should be vacated because they received no notice of the court's hearings concerning Goodson's release. They also contend that we should reverse because no plan for Goodson's release was prepared by the Department of Health and Social Services (DHSS) and the Milwaukee County Department of Social Services, as required by § 980.06(2)(c), STATS.[2]

We conclude that the applicable statutes neither require nor provide for the notice argued by McCann and Arreola. We also conclude, however, that other portions of the law requiring DHSS and the county to which such offenders are proposed to be released to

---

[1] We note that the respondent State of Wisconsin concedes, "[f]or purposes of this appeal," that Arreola and McCann have standing to challenge the trial court's order. As a result, we neither consider nor decide that issue.

[2] If, under ch. 980, STATS.—which we discuss in detail below—a person is determined to be "sexually violent" as that term is defined in the statute, the trial court may, as it attempted to do here, place the person on supervised release in a particular county. Section 980.06(2)(c), STATS., requires the court, upon a finding that the person is appropriate for supervised release, to notify DHSS, and DHSS, in turn, is required to prepare a supervision plan in conjunction with the social services department of the county in which the person is to reside. After the plan is completed and approved by the court, the person is placed on supervised release in that county. *Id.*

prepare and submit a supervision plan to the court were not complied with, and that that failure deprived the trial court of competency to order Goodson's release to Milwaukee County. We therefore reverse the order and remand to the court for further proceedings in compliance therewith.

The statutory scheme for commitment of "sexually violent" persons is somewhat complicated and warrants discussion.

Chapter 980, STATS., sets forth the commitment procedures. When a person convicted of a sexually violent offense is nearing release from prison, the agency having the authority or duty to release the person is required to notify the justice department and "each appropriate district attorney" of the impending release, providing basic information as to the conviction and related matters. Section 980.015, STATS. Either the justice department or the district attorney of either the county of conviction or the county in which the person resides (or will be placed upon release) may then file a petition with the circuit court alleging that the person is a "sexually violent person" as defined in the statute,[3] and seeking his or her commitment to DHSS for either institutional placement or supervised release. Sections 980.02 and 980.05, STATS.

If, after trial, it is determined that the person is a sexually violent person, the court is required to order him or her committed to the custody of DHSS "for control, care and treatment until such time as the person

---

[3] The statute defines a "sexually violent person" as follows: "[A] person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Section 980.01(7), STATS.

is no longer a sexually violent person." Section 980.06(1), STATS. The commitment order may call for either institutional care in a "secure mental health unit or facility" or "supervised release" to the community. Section 980.06(2)(b). In deciding between institutional-ization and release, the court may consider, among other things,

> the nature and circumstances of the behavior that was the basis of the allegation in the petition [that the person is sexually violent], . . . the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment.

*Id.*

If the court finds that supervised release is appro-priate, it is required to notify DHSS, and DHSS is required to work with the social services agency in the county in which the person will be residing to prepare a release plan and present it to the court for approval within twenty-one days. Section 980.06(2)(c), STATS. The plan identifies the supervision conditions and the treatment and services the community will provide to the person.[4] *Id.* The county designated by DHSS may

---

[4] It is important to note that under the statutory scheme the court first determines whether the person is generally suitable for supervised release; it then initiates the process of planning for such release by notifying DHSS of its determination. The final order for release comes only after DHSS and the local agency in the county DHSS has selected for release have pre-pared and filed a release plan.

Under the statute, the plan shall "address the person's need, if any, for supervision, counseling, medication, commu-nity support services, residential services, vocational services,

refuse to prepare the plan, however, in which case DHSS must attempt to arrange for another county to do so and, presumably, to accept the person. *Id.* If DHSS is unable to locate a county that will agree to participate, the court "shall designate a county department to prepare the plan . . . and place the person on supervised release in that county." *Id.* If that, too, proves unsuccessful, the court may order a county to prepare the plan and accept the person for supervised release. *Id.*[5]

Finally, § 980.06(2)(d), STATS., provides, among other things, that "[b]efore a person is placed on supervised release by the court under this section, the court shall so notify the municipal police department and county sheriff for the municipality and county in which the person will be residing."

The facts of this case are undisputed. In July 1994, the Department of Corrections, as required by § 980.015, STATS., notified the justice department and the Dodge County district attorney that Goodson, who had been convicted of sexually violent crimes in that county, would soon be released from prison. The district attorney then petitioned the court to determine Goodson to be a sexually violent person under ch. 980,

---

and alcohol or other drug abuse treatment." Section 980.06(2)(c), STATS.

[5] Section 980.06(2)(c), STATS., provides:

If the county department of the person's county of residence declines to prepare a plan, the [state] department [of health and social services] may arrange for another county to prepare the plan if that county agrees to prepare the plan and if the person will be living in that county. If the department is unable to arrange for another county to prepare a plan, the court shall designate a county department to prepare the plan, order the county department to prepare the plan and place the person on supervised release in that county.

and the case proceeded to a trial to the court. At the trial's conclusion, the court ruled that Goodson was a sexually violent person as defined in § 980.01(7), STATS., and scheduled a dispositional hearing for December 22. At the hearing, the Dodge County district attorney stipulated to Goodson's supervised release to Milwaukee County. The trial court found that such release would be appropriate but did not notify DHSS to prepare a plan in cooperation with the Milwaukee County social services agency as required by § 980.06(2)(c), STATS. Instead, the court entered an order finding that Goodson was an appropriate subject for supervised release based on his involvement in drug and alcohol rehabilitation programs, his "good correctional record," his previous stable employment, and the report of the State's "examining psychologist" containing "favorable information regarding [his] treatment progress." The order released Goodson to Milwaukee County and imposed various "conditions," including "sex offender treatment" and counseling.

After the order was issued, the court wrote to Chief Arreola and the Milwaukee County sheriff, notifying them of the ch. 980 proceedings and the order for supervised release, as required by § 980.06(2)(d), STATS. District Attorney McCann was never notified.

When McCann learned of the court's dispositional order, he moved to vacate it on grounds that he had neither been notified of Goodson's anticipated release to Milwaukee County nor been given an opportunity to be heard on the subject prior to the order's entry. Arreola moved to vacate the order on similar grounds. The trial court denied both motions.

## I. Notice to McCann

McCann claims that he was entitled to notice of the hearing on Dodge County's petition under § 980.015, STATS., which governs commencement of the commitment process. The statute provides that if an agency has "the authority or duty to release or discharge" a person "who may meet the criteria for commitment as a sexually violent person," the agency "shall inform each appropriate district attorney and the department of justice regarding the person as soon as possible beginning 3 months prior to [the release or discharge]." Section 980.015(1) and (2). The agency—in this case, DHSS—is required to provide the district attorney and department of justice with "[t]he person's name, identifying factors, anticipated future residence and offense history," together with applicable documentation of the person's treatment and "adjustment to . . . institutional placement." Section 980.015(3)(a) and (b).

In denying McCann's motion to vacate the dispositional order, the trial court interpreted § 980.015, STATS., as relating only to the notice of the person's impending release to the agency authorized by § 980.02, STATS., to commence the commitment proceedings: the department of justice or the district attorney of the county of the person's conviction, residence or placement.

We are, of course, not bound by the trial court's interpretation of a statute; statutory interpretation involves questions of law which we decide independently. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). We are satisfied, however, that the trial court properly read and applied the statutes.

■ Considered as a whole, and in the order they appear in the chapter, §§ 980.015 and 980.02, STATS., plainly contemplate a process whereby: (1) the agency about to release a person who may meet the requirements for commitment as a sexually violent person is required to notify the department of justice and the "appropriate" district attorney of that impending release, and to provide a summary of identifying information; and then (2) upon receipt of that information, either the department of justice or the district attorney in the county of conviction, or the county in which the person will reside or be placed upon discharge, may elect to petition the court for commitment.

At the time the § 980.015 notice is to issue—"as soon as possible beginning 3 months prior to the applicable [discharge] date"—no court hearing of any kind is either pending or scheduled, for there is no "case." The district attorney receiving the notice of the person's release from prison has not yet exercised his or her discretion to petition for commitment under § 980.02, STATS. It is thus not even known whether commitment proceedings will be instituted, much less which county might, at the conclusion of such proceedings, be designated as the county of placement. As the trial court noted in its decision, to require notice to the district attorney of the receiving county before any proceedings are commenced—and before the identity of the receiving county is known—would require that notices be sent to any one (or all) of three-score or more district attorneys around the state. According to the court, this would be the equivalent of requiring "notices . . . to be given by a non-party to the lawsuit to another non-party to the lawsuit . . . before the lawsuit is ever filed . . . ." We think the analogy is apt.

■

The § 980.015 notice is plainly intended to facilitate *commencement* of the commitment proceedings by the "appropriate" district attorney: the district attorney in the county of conviction or the county to which the prison authorities propose to release the person. In this case, that release notice was sent to the "appropriate district attorney"—the district attorney of Dodge County, the county in which Goodson's convictions were entered.

■

We conclude, therefore, that § 980.015, STATS., did not require notice to the Milwaukee County district attorney prior to commencement of these proceedings, or even prior to the hearing to determine commitment or placement.[6]

## II. *Notice to Arreola*

Arreola bases his argument that he was entitled to pre-hearing notice of the commitment proceedings on

[6]McCann argues that *State ex rel. Zabel v. Hannan*, 219 Wis. 257, 262 N.W. 625 (1935), compels a different result. In that case the prosecuting district attorney challenged the defendant's release on parole because he had not been notified of the parole hearing as required by law, and the supreme court agreed, voiding the parole for lack of such notice. *Id.* at 265, 262 N.W. at 628.

*Zabel* is distinguishable, however, because notice to the district attorney was specifically required by the parole statute: " 'The board . . . may, *upon ten days' written notice to the district attorney . . . who participated in the trial* . . ., parole any prisoner convicted of a felony and imprisoned in the state prison . . . .' " *Id.* at 261, 262 N.W.2d at 626 (quoting § 57.06, STATS., 1935) (emphasis added). In this case, as we have held, McCann had no similar statutory right to notice of the commitment proceedings.

language in § 980.06(2)(d), STATS., that states, "Before a person is placed on supervised release by the court under this section, the court shall so notify the municipal police department and county sheriff for the municipality and county in which the person will be residing."

We begin by noting the placement of that provision in the statutory scheme. It does not appear in the sections governing either the petition for commitment or the trial of ch. 980 proceedings. Rather, it appears in the concluding subsection—following the provisions setting forth the criteria for supervised release, those defining the content and requirements of supervised-release orders, and those governing preparation of a release plan by DHSS and the receiving county. Section 980.06(2)(b) and (c), STATS. It is only then—after the court determines that supervised release to a particular county is appropriate and that county has either agreed or been ordered to prepare a plan and accept the person under § 980.06(2)(c)— that the court is required by § 980.06(2)(d) to "so notify the . . . police department and county sheriff" in that county.

So considered, § 980.06(2)(d), STATS., on its face, does not relate to the right to be heard at either the hearing on the merits of the commitment proceeding or the dispositional hearing. The statutes are structured so that the trial court first determines whether institutionalization is necessary or whether supervised release is appropriate. If the court finds release to be appropriate under the statutory criteria, it must notify DHSS, and DHSS is to work with the receiving county to develop the release plan. Even then, as we have indicated, the designated county can decline to receive the person. If it does decline, DHSS is directed to seek the agreement of another county to accept placement.

And, failing that, the court may order a specific county to prepare a plan for the person's supervised release in that county. Section 980.06(2)(c).

It is only after all these proceedings are completed and the receiving county has been finally designated that the court is required to notify law enforcement authorities in the receiving county of the person's actual release. Considered in context, § 980.06(2)(d), STATS., exists to ensure that law enforcement agencies in the community in which a sexually violent person is to be placed have notice of that placement in order that they might take appropriate precautions and make appropriate provisions to secure the safety of the community. The statute does not give such agencies the right to be heard on the merits of the commitment or the ultimate disposition, however; the legislature has plainly left those decisions to health and correctional professionals and to the court. We conclude, therefore, that § 980.06(2)(d) did not require notice to Arreola prior to the hearings in this matter.

Whether a law structured to allow a sexually violent person's release into a community without giving the law enforcement authorities in that community the right to be heard on the question is a wise one, or, as McCann and Arreola assert, an unwise one, is not for us to say. That is a judgment for the legislature to make, not the courts. We read statutes; we do not write them. And we read them only for the purpose of ascertaining the legislature's intent in enacting them. In determining that intent, our first resort is to the language of the statute. "If the statute is clear on its face, our inquiry as to the legislature's intent ends and we must simply apply the statute to the facts of the case."

439

*Interest of Peter B.*, 184 Wis. 2d 57, 70-71, 516 N.W.2d 746, 752 (Ct. App. 1994). We do not look behind the plain language of a statute, and the statutes argued by McCann and Arreola in support of their claimed entitlement to pre-hearing notice of ch. 980 commitment proceedings do not so provide.

### III. *The Absence of a Release Plan*

As a practical matter, if the plan-making requirements of § 980.06(2)(c), STATS., are followed in commitment proceedings, the county intended as the receiving county will have notice of at least the dispositional proceedings for, as we have noted above, the statute not only directs DHSS to involve the county in planning for the person's eventual release but gives the county the opportunity to decline to do so.

In this case, however—and for reasons we have been unable to ascertain in the record—those requirements were not followed. The trial court never notified DHSS of its determination that Goodson was an appropriate candidate for supervised release, and Milwaukee County was not asked to assist in preparing a plan for Goodson's supervision, as required by § 980.06(2)(c), STATS.

We conclude, therefore, that the trial court erred when, for whatever reason, it failed to follow the statutory procedure. And because that procedure plainly contemplates a final order for supervised release only after the receiving county has been designated through the DHSS/county planning process—or, in default, by the court under § 980.06(2)(c), STATS.—the trial court lacked competence to order Goodson's release to Milwaukee County.

440

The State concedes that the trial court failed to follow the requirements of § 980.06(2), STATS., in issuing its order, acknowledging that "the provisions of sec. 980.06 were not properly followed in this case." It attempts to excuse the error, however, by a conclusory statement to the effect that DHSS "has taken appropri-. ate steps to assure that the statute is followed in future cases . . . ."

We reject the State's "we-won't-do-it-again" argument. The trial court's failure to follow plainly prescribed procedures which we consider central to the supervised-release process rendered it incompetent to order Goodson's release to Milwaukee County, and requires that we reverse the order and remand to the court with directions to implement the requirements and procedures of § 980.06(2)(c) and (d), STATS. We do not disturb the trial court's findings on Goodson's eligibility for supervised release in general, having rejected the appellants' arguments that reversal of those findings are required as a result of their failure to receive pre-hearing notice; we reverse only to permit the process to continue from that point on, as required by statute.

*By the Court.*—Order reversed and cause remanded with directions.