IN RE the COMMITMENT OF Richard BOLLIG:

STATE of Wisconsin, Petitioner-Appellant,

v.

Richard L. BOLLIG, Respondent-Respondent.†

Court of Appeals

*No. 97–2231. Submitted on briefs June 9, 1998.—Decided October 22, 1998.*

(Also reported in 587 N.W.2d 908.)

†Petition to review denied.

559

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Mary E. Burke*, assistant attorney general.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Richard D. Martin*, assistant state public defender, of Milwaukee.

Before Eich, Vergeront and Roggensack, JJ.

ROGGENSACK, J. The State of Wisconsin appeals from an order of the circuit court dismissing a ch. 980 petition against Richard Bollig. The circuit court concluded that it lacked competency to proceed in the matter because attorney Jeffrey Mochalski had not been appointed as a special prosecutor under either § 978.045(1r) or § 978.045(3)(a), STATS., when he filed the ch. 980 petition against Bollig, and his subsequent appointment by the court could not cure that defect. Because we conclude that under the facts of this case any defect in the appointment of Mochalski was not central to the purpose of § 978.045(1r) and that Bollig suffered no prejudice, the court had competency to proceed on the ch. 980 petition. Therefore, we reverse and remand for further proceedings.

## BACKGROUND

On October 10, 1991, Bollig was convicted of second-degree sexual assault, contrary to § 940.225(2)(a), STATS., and on November 20, 1991, he was sentenced to eight years in prison. On December 9, 1996, the Department of Corrections notified John Matousek, Monroe County District Attorney, that the Department of Corrections was requesting the Department of Justice (DOJ) to file a ch. 980 petition against Bollig. The communication stated that Bollig's anticipated date of release from Kettle Moraine Correctional Institution was Wednesday, February 5, 1997.[1]

In either late December of 1996 or early January of 1997, after he learned that DOJ would not be filing the petition, Matousek asked Mochalski to prepare and file a ch. 980 petition on Bollig. Based on Matousek's authorization, Mochalski commenced work as a special prosecutor in early January. On February 3, 1997, Mochalski filed the ch. 980 petition in Monroe County Circuit Court, which he signed as "Special Prosecutor—Monroe County." On February 3rd, the Monroe County Circuit Court found probable cause to hold further hearings on the petition and ordered Bollig transported to Monroe County for those hearings. On February 4, 1997, based on Matousek's illness and the assistant district attorney's absence from the office, the Monroe County Circuit Court issued an order appointing Mochalski as special prosecutor for "[a]ny and all workload necessary beginning 2/3/97 and continuing until ADA returns on 2/12." On February 5, 1997, the court issued a second order specifically

---

[1] August 16, 1999 was listed as Bollig's maximum discharge date.

561

appointing Mochalski to handle the ch. 980 petition on Bollig.

Bollig did not object to Mochalski representing the State as a special prosecutor at his initial appearance on February 6, 1997, nor did he object at his probable cause hearing on February 13, 1997, where the court found probable cause to believe that Bollig is a sexually violent person within the meaning of § 980.01(7), STATS., and ordered further proceedings on the ch. 980 petition.

On May 7, 1997, pursuant to § 802.06, STATS., Bollig filed a motion to dismiss the petition, asserting that Mochalski was not authorized to file it because the court had not appointed him special prosecutor on February 3, 1997, the date on which he filed the petition. On May 13, 1997, the circuit court conducted a hearing on the motion during which Mochalski and Matousek explained the circumstances surrounding Mochalski's appointment. It was undisputed that Matousek asked Mochalski to act as a special prosecutor in regard to Bollig's ch. 980 petition and that Mochalski agreed to do so prior to filing the petition.

On June 12, 1997, the circuit court issued a written decision concluding that special prosecutors appointed pursuant to § 978.045(1r), STATS., may represent the State in ch. 980 proceedings, but that a court cannot retroactively confer authority on an attorney to file such a petition. The circuit court also concluded that absent authority to act as a special prosecutor when the petition was filed, the court had no jurisdiction to proceed on the petition. It reached this conclusion because it believed Mochalski's prior appointment as a special prosecutor was a "fundamen-

tal[2] requirement" of his being able to initiate a ch. 980 petition.

On June 16, 1997, Mochalski and Matousek gave more testimony about Mochalski's appointment, bearing on whether he had been appointed as a public service special prosecutor under § 978.045(3)(a), STATS. The circuit court concluded that Mochalski had not been appointed pursuant to § 978.045(3)(a) when he filed the petition because Mochalski anticipated Matousek would be paid.[3] Thereafter, the court concluded it lacked competency to hear the ch. 980 petition Mochalski filed. It did so because it assumed that lack of an appointment prior to filing the petition was a defect that could not be cured. On June 19, 1997, the court issued a written order dismissing the petition, but it stayed Bollig's release. This appeal followed.

## DISCUSSION

**Standard of Review.**

■

A court's competency to act is a question of law which we review *de novo. Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 200, 496 N.W.2d 57, 60 (1993). Whether a defect in statutory compliance is central to the statutory scheme for the appointment of a special prosecutor is also a question of law that we review independently of the circuit court. *Arreola v. State*, 199

[2] The determination that a defect in process is "fundamental" has been discussed most frequently in personal jurisdiction contexts. *See Burnett v. Hill*, 207 Wis. 2d 110, 557 N.W.2d 800 (1997).

[3] At the hearing, Mochalski volunteered to forgo payment "to maintain the jurisdiction" of the court. This offer was not addressed by the circuit court.

Wis. 2d 426, 441, 554 N.W.2d 611, 617 (Ct. App. 1996); *see Burnett v. Hill*, 207 Wis. 2d 110, 121, 557 N.W.2d 800, 805 (1997).

**The State's Contentions.**

The State argues that Bollig waived his objection to the circuit court's competency because he failed to object at his initial appearance on February 6th. The State also contends that Mochalski was a *de facto* special prosecutor when he filed the ch. 980 petition. And finally, the State argues that the defect in Mochalski's appointment was cured by his *nunc pro tunc* appointment on February 4, 1997.

### 1. *Waived arguments.*

Bollig asserts that the State did not raise the waiver or the *de facto* special prosecutor argument before the circuit court. Arguments that are raised for the first time on appeal by an appellant are deemed waived. *State v. Keith*, 216 Wis. 2d 61, 80, 573 N.W.2d 888, 897 (Ct. App. 1997) (citing *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198, 206 (Ct. App. 1993)). This waiver rule applies to the State with equal force, when the State is the appellant. *State v. Rogers*, 196 Wis. 2d 817, 826–29, 539 N.W.2d 897, 900–01 (Ct. App. 1995).

The State did not argue to the circuit court that Bollig had waived his objection to the court's competency by not raising it until May 7, 1997. It also did not contend that Mochalski was a *de facto* special prosecutor. Although Mochalski and Matousek testified that Matousek requested Mochalski to act as a special prosecutor in the Bollig ch. 980 petition prior to Mochalski's

commencing work on it, and that Mochalski agreed to do so, Matousek continued to assert that he anticipated Mochalski would be paid for his work, thereby causing the circuit court to conclude that no appointment was made either under § 978.045(1r) or § 978.045(3)(a), STATS., prior to February 3rd, when the petition was filed. *De facto* authority was not argued or even mentioned until the State submitted its brief to this court. Therefore, we must conclude that the State has waived both arguments.

### 2. Competency.

Neither party argues that Mochalski was properly appointed as a special prosecutor under § 978.045(1r) or § 978.045(3)(a), STATS.,[4] when he filed the ch. 980 petition. Therefore, the only remaining issue is whether the defect in Mochalski's appointment under § 978.045(1r) resulted in the circuit court's losing competency to proceed.

A circuit court has subject matter jurisdiction, conferred by the state constitution, to consider and determine any type of action; however, failure to comply with a statutory mandate may result in a loss of competency which can prevent a court from adjudicating a specific case before it. *State v. Kywanda F.*, 200 Wis. 2d 26, 33, 546 N.W.2d 440, 444 (1996). As we have explained:

> Competency is a narrower concept than subject matter jurisdiction and is grounded in the court's

---

[4] The circuit court appears to have had § 978.045(3)(a), STATS., in mind when it conducted the second hearing, but the State did not argue to the circuit court that Mochalski had authority to file the ch. 980 petition under that subsection.

> power to exercise its subject matter jurisdiction. . . .
> Although a court is vested with subject matter juris-
> diction by the constitution, the legislature may
> enact statutes which limit a court's power to exer-
> cise subject matter jurisdiction. Such legislative
> measures affect a court's competency rather than
> its jurisdiction.

*Kohler Co. v. Wixen,* 204 Wis. 2d 327, 336–37, 555
N.W.2d 640, 644 (Ct. App. 1996) (citation omitted).
Failure to comply with a statutory mandate may result
in a loss of competency to proceed in a particular case.
*See State v. Zanelli,* 212 Wis. 2d 358, 365, 569 N.W.2d
301, 304 (Ct. App. 1997). We have also stated that a
circuit court's "failure to follow plainly prescribed pro-
cedures which we consider central . . . render[s] it
incompetent . . . ." *Arreola,* 199 Wis. 2d at 441, 554
N.W.2d at 617.

■ However, noncompliance with a mandatory stat-
ute does not always require a loss of competence.
*Kywanda F.,* 200 Wis. 2d at 33, 546 N.W.2d at 444. In
*Kywanda F.,* the supreme court reviewed Kywanda's
contention that because failure to follow the time limits
in a ch. 48 proceeding had been held to result in a loss
of competence in *Green Co. Dep't of Human Servs. v.
H.N. (In the interest of B.J.N.),* 162 Wis. 2d 635, 469
N.W.2d 845 (1991), and other cases arising under ch.
48, the same result must obtain following the circuit
court's failure to inform her of her right to judicial
substitution. In reviewing Kywanda's contention, the
supreme court examined the conclusions in those cases
and decided that they were driven by the legislative
history surrounding the time limits of ch. 48, which
showed strict adherence to the time limits was neces-
sary to the due process rights of children and their

parents. Therefore, it concluded that the legislature must have intended that a court would lose competence if it did not comply with the mandatory time limits in ch. 48. *Kywanda F.*, 200 Wis. 2d at 34, 546 N.W.2d at 445. However, the supreme court found no similar legislative history requiring a loss of competence for the error of which Kywanda complained, even though § 48.30(2), STATS., was also phrased in mandatory terms and located in the same chapter. The court then concluded that in regard to § 48.30(2), the failure to inform Kywanda of her right to judicial substitution was harmless error, unless actual prejudice resulted from the error. *Kywanda F.* at 35–37, 546 N.W.2d at 445–446.

Our analysis of a challenge to the circuit court's competency in *Arreola* is consistent with *Kywanda F.*, but it does not examine legislative history to determine whether it was the intent of the legislature that a circuit court lose competency if the provisions of § 980.06(2)(c), STATS., were not followed. In *Arreola*, we examined whether the circuit court's failure to notify the Department of Health and Social Services[5] of its determination that Richard Goodson was an appropriate candidate for supervised release and failure to ask Milwaukee County to assist in preparing a plan for his supervision were "central" to the supervised release process. Because we determined that the court's failures were "central" to the statutory scheme for supervised release under ch. 980, we concluded the circuit court lost competency to take the subsequent step of ordering Goodson's actual release.

Both *Kywanda F.* and *Arreola* arrived at their conclusions by considering whether the legislative purpose

---

[5] The Department of Health and Social Services is now the Department of Health and Family Services.

of the statutory scheme could be fulfilled, without strictly following the statutory directive. *Kywanda F.* did so by analyzing the legislative history for the time limits in ch. 48, and the lack of similar history for the judicial substitution statute, under the same chapter. In *Arreola*, we did so by analyzing what was required to make the supervised release process operate as the legislature intended.

The analysis employed in both *Kywanda F.* and *Arreola* is very similar to that used to determine whether a defect affecting personal jurisdiction is fundamental or technical. Although there are few cases which discuss competency in detail, there are many cases that describe how one determines whether a defect is technical or fundamental in a personal jurisdiction context.[6] Our examination of those cases leads us to conclude that the personal jurisdictional analysis in regard to the fundamental/technical dichotomy is instructive to our determination of whether the defect in Mochalski's appointment under § 978.045(1r), STATS., was "central" to the legislature's purpose because under both analyses the legislative purpose of the statutory scheme must be determined and a deci-

---

[6] For example, in *Burnett* where personal jurisdiction was at issue, the supreme court considered whether the failure to authenticate the publication summons constituted a fundamental defect in service and in *Gaddis v. LaCrosse Prods., Inc.*, 198 Wis. 2d 396, 542 N.W.2d 454 (1996), another personal jurisdiction case, the supreme court considered whether serving an unsigned summons, accompanied by a signed complaint, constituted a fundamental defect in service. The court concluded that the purpose of the summons was notice. Because that purpose had been achieved by the documents that were served, the court concluded the defect was technical. *Id.* at 405, 542 N.W.2d at 457; *Burnett*, 207 Wis. 2d at 125, 557 N.W.2d at 806.

sion made about whether it could be fulfilled, without strictly following the statutory directive.

In order to determine whether the defect in Mochalski's appointment resulted in a loss of competence, we must determine whether it is central to § 978.045(1r), STATS., the subsection under which his appointment was made. *Arreola*, 199 Wis. 2d at 441, 544 N.W. at 617. To assist us in this determination, we examine the statutory scheme set out in § 978.045. There are three subsections under which a practicing attorney may be appointed as a special prosecutor: (1g), (1r) and (3)(a). The subsections differ in regard to whether prior approvals are necessary; the circumstances which can provide the basis for an appointment; and whether the appointee is paid for the services that are performed.

Under (1g), either the court, on its own motion, or the district attorney can move the court to appoint a special prosecutor. If the appointment involves more than six hours per case, the court or the district attorney must certify to the Department of Administration (DOA) that no other prosecutorial unit is able to do the work for which a special prosecutor is requested and DOA must give prior approval to make the appointment. DOA pays the bill for all appointments under (1g).

Under (1r), again, the court, on its own motion, or the district attorney, can move the court to appoint a special prosecutor. However, there are only eight stated reasons for which the court may make an appointment under (1r). Because the circumstances under which an appointment may be made are limited by statute, no prior DOA approval is required. The court sets the compensation and again, DOA pays the bill.

Under (3)(a), the district attorney can appoint a special prosecutor without DOA approval or an order of a court. A special prosecutor appointed under (3)(a) has the same authority as one appointed under the other sections of the statute. However, there is no payment made to a special prosecutor in a (3)(a) appointment. The appointee is a state employee for certain purposes and can use the supplies of the district attorney's office, but he or she serves without compensation, except that which may be continued for a period of up to four months by the appointee's law firm.

██

It is necessary to the statutory scheme that the power of the district attorney is not exercised without either a prior authorization from the district attorney or the circuit court. *See State v. Schober*, 167 Wis. 2d 371, 382, 481 N.W.2d 689, 693 (Ct. App. 1992). However, the purpose behind the different ways in which a special prosecutor may be appointed is targeted at controlling DOA's expenditures.[7] The subsections of § 978.045, STATS., control the State's costs in regard to using special prosecutors, either by requiring prior

---

[7] The legislative history which surrounds § 978.045, STATS., focuses on controlling the costs of a special prosecutor for which DOA will be responsible. This purpose was made most clear when subsection (3)(a) was enacted. That legislative history relates that:

> Under current law, a court, under certain circumstances, may appoint a special prosecutor to perform the duties of the district attorney. The court fixes the amount of the compensation for that special prosecutor.
> Under this bill, the district attorney may appoint, without court approval, an attorney to serve as a public service special prosecutor without state compensation. The public service special prosecutor serves at the pleasure of the district attorney.

Leg. Ref. Bureau Analysis, 1991 S.B. 519.

DOA approval and a subsequent court order, as in § 978.045(1g), or by limiting the circumstances for which an appointment may be made to those listed in the statute, as in § 978.045(1r). However, if DOA is not required to pay for the services rendered, as in § 978.045(3)(a), then no prior approval from DOA is needed; no court order is needed; and the district attorney's authorization to act on behalf of the State is sufficient, in and of itself. The respondent has not identified any legislative history which indicates that strict compliance with the procedures of § 978.045(1r) would result in a loss of competence. And we could find none. Therefore, we conclude that the central purpose of appointments under § 978.045(1r) is to assure that the State will not have to pay for the services of a special prosecutor under circumstances not anticipated in the statute.

■ Here, Mochalski's appointment on February 4, 1997 was initiated by a subsection (1r) motion. It is undisputed that the circuit court had sufficient reason to appoint Mochalski to act as a special prosecutor, due to Matousek's illness and the absence from the office of the assistant district attorney. It is also undisputed that Matousek authorized Mochalski to prepare and file the ch. 980 petition before he did so. Therefore, we conclude that under these facts, the defect in the court's appointing Mochalski one day after he filed the petition is not central to § 978.045(1r), STATS. Therefore, it can affect the circuit court's competence only if Bollig suffered actual prejudice. *Kywanda F.*, 200 Wis. 2d at 37, 546 N.W.2d at 446.

A ch. 980 petition may be filed "within 90 days of discharge or release, on parole or otherwise, from a sentence that was imposed for a conviction for a

sexually violent offense, from a secured correctional facility." Section 980.02(2)(ag), STATS. When a time limit is measured from an event, the day on which the event takes place is excluded from the computation. Section 990.001(4)(d), STATS. Bollig's expected date of release from Kettle Moraine Correctional Institution was February 5, 1997. Therefore, the earlier date of the two dates[8] from which the ninety-day time limit for filing Bollig's ch. 980 petition could be measured from under § 980.02(2)(ag) is his expected date of release, February 5, 1997. Bollig's expected release date is excluded from the ninety days set out in § 980.02(2)(ag), but February 4th, the date on which the circuit court signed the order appointing Mochalski, is still within the ninety-day time frame.[9] Therefore, Bollig was not prejudiced by the court's appointing him on February 4th, *nunc pro tunc* to February 3rd.[10]

## CONCLUSION

Because we conclude that the defect in Mochalski's appointment by the court as special prosecutor under § 978.045(1r), STATS., was not central to the statutory scheme of § 978.045, it was cured, and his appointment

---

[8] Bollig's maximum discharge date was August 16, 1999.

[9] Because we conclude the petition was timely under the shorter time limit calculated from February 5, 1997, we do not reach the question of whether a petition that was untimely in regard to the expected date of release from a secured facility, but timely under a maximum discharge date, meets the criteria of § 980.02(2)(ag), STATS.

[10] Looked at another way, Mochalski could have simply refiled the same ch. 980 petition on February 4, 1997, after his appointment as special prosecutor, and it would have been within the ninety-day window prescribed by statute.

validated, by the circuit court's February 4, 1997 order. Additionally, Bollig was not prejudiced by the circuit court's *nunc pro tunc* order. Therefore, we conclude the circuit court had competency to proceed with the ch. 980 petition Mochalski filed and we reverse its order dismissing the petition and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.