STATE of Wisconsin, Plaintiff-Respondent,

v.

Calvin BOGGESS, Defendant-Appellant.†

Court of Appeals

*No. 82–798–CR. Submitted on briefs November 1, 1982.—
Decided December 14, 1982.*
(Also reported in 328 N.W.2d 878.)

† Petition to review granted.

310

For the appellant the cause was submitted on the briefs of *Donna L. Hintze,* assistant state public defender.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Daniel J. O'Brien,* assistant attorney general, assisted by *Michael Maier,* law clerk, department of justice.

Before Foley, P.J., Dean and·Cane, JJ.

CANE, J.  Calvin Boggess appeals from three child abuse convictions. He asserts that the evidence used to convict him was obtained by an unconstitutional entry into his home. Because the warrantless entry into Boggess' home to investigate a child abuse report was justified under the emergency doctrine rule, we affirm.

Greg Benesh, a social worker for the Oconto County Department of Social Services, received an anonymous telephone call informing him that L.S. and K.S. had been battered and needed medical attention. The caller stated that he observed L.S. limping, with bruises on his body, and in need of medical attention. He also stated that the children were residing with Boggess, who

had a bad temper, and that he knew the Boggesses fairly well. This information was immediately given to Joan Hammel,[1] the social worker on duty. Because Hammel was concerned about Boggess' bad temper, she had officer McMahon accompany her to the Boggess home. Hammel identified herself to the Boggesses and stated that she wanted to ascertain the safety and welfare of the children because her department had received a telephone call concerning their condition. Boggess asked to see a warrant, and Hammell responded that under the children's code she did not need one.[2] Boggess then allowed them into the house where they observed the five-year-old boy, L.S., and ten-year-old girl, K.S. Hammel observed a pronounced part of L.S.'s lip missing. Without directing the question to either parent, Hammel asked, "[w]hat happened? How did he get hurt?" Boggess responded that he had fallen on him.

---

[1] In the transcript, Joan Hammel is sometimes referred to under her married name of Joni Heroux.

[2] Section 48.981, Stats., provides in part:

(3) Procedures . . . .

(b) *Duties of local law enforcement agencies.* 1. Any person reporting suspected abuse or neglect of a child may request an immediate investigation by the sheriff or police department if the person has reason to believe that the child's health or safety is in immediate danger. Upon receiving such a request, the sheriff or police department shall immediately investigate to determine if there is reason to believe that the child's health or safety is in immediate danger and take any necessary action to protect the child.

. . . .

(c) *Duties of county agencies.* 1. The county agency shall act in accordance with s. 48.57. Within 24 hours of the receipt of an initial report of suspected child abuse or neglect, the county agency shall commence an appropriate and thorough investigation to determine whether the report is "indicated" or "unfounded." The complete investigation shall, if possible, include a visit to the child's home or usual place of abode, observation of the child and an interview with the child's parents or custodians.

Hammel continued to examine L.S. in a bedroom with his mother present and Boggess remaining in the living room. L.S. undressed, revealing purple bruises on both sides of his legs from the ankles to the thighs. His arms were similarly covered with purple bruises from the elbows to the wrists and he also had bruises halfway up his back. Hammel described L.S. as almost all purple from recent bruises. His lip wound was dirty, inflamed, and in need of cleaning, and the lip was starting to grow improperly. He also walked with a "waddled limp" and had hair missing from the top of his head. K.S. was also observed with purple bruises covering her entire buttocks.

Prior to taking L.S. into the bedroom, Boggess, without any prompting, said "I will admit I got a little rough with him. I was spanking him and I fell on him. And that's how he hurt himself." When Hammel examined L.S. in the bedroom, McMahon remained in the living room with Boggess, who stated, without being asked any questions, that "I did give him a few spankings, because he wets his pants." Prior to Hammel taking K.S. into the bedroom, Boggess again said without any prompting that he spanked K.S. "because she just didn't listen."

Hammel immediately took the children to a hospital for medical examinations and photographs. The parents followed in their car. No arrests were made, nor were the parents interrogated.

The trial court held that the entry into the Boggess home fell within the emergency exception to the warrant requirement and denied the motions to suppress Hammel's and McMahon's testimony concerning their observations, Boggess' statements, and the children's photographs taken at the hospital. Boggess subsequently entered into an agreement with the state, which reduced the initial charges in the complaint from one count of mayhem and two counts of child abuse to three counts of child abuse. He pled guilty to amended charges.

The issue on appeal is whether under these facts the warrantless entry and observations at the Boggess home fall within the emergency exception. In *State v. Kraimer*, 99 Wis. 2d 306, 314, 298 N.W.2d 568, 572 (1980), the emergency doctrine was defined as follows:

"Law enforcement officers may enter private premises without either an arrest or a search warrant to preserve life or property, to render first aid and assistance, or to conduct a general inquiry into an unsolved crime, provided they have reasonable grounds to believe that there is an urgent need for such assistance and protective action, or to promptly launch criminal investigation involving a substantial threat of imminent danger to either life, health, or property, and provided, further, that they do not enter with an accompanying intent to either arrest or search."

The ultimate standard under the fourth amendment is the reasonableness of the entry in light of the facts and circumstances of the case. The element of reasonableness with regard to the emergency rule is supplied by the compelling need to render immediate assistance to the victim of a crime, or to insure the safety of the occupants of a house when the police reasonably believe them to be in distress and in need of protection. *Id.* at 315, 298 N.W.2d at 572.

In *State v. Prober*, 98 Wis. 2d 345, 365, 297 N.W.2d 1, 12 (1980), our supreme court established a two-step analysis to be applied when determining whether a warrantless entry that is claimed to be justified under the emergency doctrine is reasonable and therefore valid. First, the officer must actually be motivated by a perceived need to render aid or assistance. Second, a reasonable person under the circumstances would have

thought an emergency existed. Under this analysis, the exigency of the situation is tested both subjectively and objectively. We then must make an independent examination of the facts of this case to ascertain if the two-step analysis is satisfied.

The determination of whether the emergency exception applies in this case therefore requires the resolution of two questions: (1) Were Hammel and McMahon actually motivated by a perceived need to render aid or assistance, and (2) were the circumstances confronting them at the time they entered the Boggess residence and made their observations of the children such that a reasonable person would have believed an emergency existed? For the entry to be valid under the emergency exception, both of these questions must be answered affirmatively.

The first question is a subjective question of fact. The trial court found that Hammel and McMahon were actually motivated by an intent to render aid or assistance to the children. That finding must be sustained on appellate review unless it is against the great weight and clear preponderance of the evidence. *See Kraimer,* 99 Wis. 2d at 319, 298 N.W.2d at 574. A review of the record supports the court's finding. Hammel testified that her purpose in going to the home was related to the health, safety, and welfare of the children. Her actions at the home also demonstrated that this was her only purpose. She immediately examined the children and took them to a hospital. The officer made no arrests, engaged in no interrogation, and collected no evidence other than Hammel's observations of the children.

The second question also involves a factual issue of whether upon an objective analysis of the circumstances

confronting Hammel and McMahon, including the nature and reliability of their information, it can be said that their investigative conduct was supported by a reasonable belief that an emergency existed. *Id. at* 325, 298 N.W.2d at 576–77. The trial court found that the information received would lead a reasonable person to believe an emergency existed. Boggess argues that the anonymous call was not reliable, and the information received was not sufficient to support a reasonable belief that an emergency existed. We disagree. The test is whether the officer had knowledge that would lead a reasonable officer to believe it was probable that an emergency existed. This probable cause requirement must be applied by reference to the circumstances then confronting the officer, including the need for prompt assessment of sometimes ambiguous information concerning potentially serious consequences. This required factual justification is less than that necessary to support an arrest or formal search. *Id.* at 324, 298 N.W.2d at 577. When faced with information received from a citizen informant, Wisconsin holds that the test for reliability shifts from a question of personal reliability to "observational" reliability. A citizen informant's reliability must be evaluated from the nature of his report, his opportunity to hear and see the matter reported, and the extent to which it can be verified by an independent police investigation. *State v. Doyle,* 96 Wis. 2d 272, 287, 291 N.W.2d 545, 552 (1980).

Here, the caller gave specific information based on his observations of the children, which included an identification of the children and their location, a description of their injuries, an identification of the parents with whom he was personally acquainted, and a conclusion based upon the nature of the observed injuries that the children needed medical attention. This information could readily be verified by an independent investigation.

The trial court's finding that these circumstances merited a reasonable belief that an emergency existed is supported by the evidence. It is reasonable for authorities with such information to render immediate assistance to children who they had reason to believe were in need of medical attention. We therefore conclude that the trial court's findings are not against the great weight and clear preponderance of the evidence. We also conclude that, based on our independent review of the circumstances, the constitutional requirement of reasonableness was satisfied.

## STATEMENTS

Boggess also objects to the admission of his statements made in Hammel's and McMahon's presence. He argues that the statements were the product of an illegal search and in violation of his rights against self-incrimination and to assistance of counsel. The trial court held that Boggess volunteered these statements and that they were not the result of any custodial interrogation. We agree.

When general on-the-scene questions are asked that are investigatory in nature rather than accusatory, the *Miranda* rule does not apply. *See Kraimer*, 99 Wis. 2d at 329, 298 N.W.2d at 579. Upon observing L.S.'s lip injury, Hammel asked a general question of what happened. The question was directed to both parents and was not accusatory. Hammel was attempting to determine the extent of L.S.'s injuries. Boggess' other statements were volunteered and not in response to any questioning.

Boggess was neither arrested nor interrogated at his home. Consequently, under the circumstances, neither Hammel nor McMahon were required to advise Boggess of his constitutional rights, and *Miranda* did not apply because they were performing an investigation of a re-

ported emergency. The trial court's failure to suppress the statements was not error.

*By the Court.*—Judgment affirmed.

FOLEY, P.J. (*dissenting*). A telephone call from an anonymous informant is not sufficient to justify the warrantless entry of an occupied home by a government agent. The purpose of the fourth amendment could too easily be subverted by alleged anonymous calls. I therefore cannot agree with the majority holding, regardless of my disgust for the defendant and his wife or my sympathy for the victims. When balanced against society's need to preserve the protection provided by the fourth amendment, the court must subordinate even the possibility of further harm to children. The responsibility for any harm lies not with the law, but with the anonymous informant who refused to get involved.

Because Hammel and McMahon had no right to be in the defendant's home where they heard his statements, his statements should be suppressed. This does not, however, preclude the children from testifying. I also would not necessarily suppress the observations that were made of the children who, unlike other physical evidence, could move out of the home on their own to a place where they could be legally observed. As every parent knows, there is no reasonable expectation of privacy in young children.