IN RE the COMMITMENT OF Ronald J. ZANELLI:

STATE of Wisconsin, Petitioner-Respondent,

v.

Ronald J. ZANELLI, Respondent-Appellant.†

Court of Appeals

*No. 98–0733. Submitted on briefs November 16, 1998.—Decided December 8, 1998.*

(Also reported in 589 N.W.2d 687.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jane Krueger Smith* of Oconto Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, *Sally L. Wellman*, assistant attorney general, and *Barbara L. Oswald*, assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. Ronald Zanelli appeals from an order, following a jury trial, requiring his civil commitment as a sexually violent person under ch. 980, STATS. Zanelli raises four arguments in this, his second appeal. First, he claims that the evidence was insufficient as a matter of law to support a diagnosis of pedophilia because he did not meet the diagnostic criteria for pedophilia in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS § 302.2 at 527–28 (4th ed. 1994) (DSM-IV). As a result, he asserts, his constitutional rights to notice and confrontation were violated. We reject these arguments because there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Zanelli suffers from a mental disorder. Second, Zanelli asserts that the trial court erred by failing to give a jury instruction defining "substantial probability." This second argument fails under *State v. Zanelli*, 212 Wis. 2d 358, 374–76, 569 N.W.2d 301, 308 (Ct. App. 1997) (*Zanelli I*), in which we held that the trial court is not required to define substantial probability.

Third, he argues that the trial court erroneously exercised its discretion when it released information

from the presentence investigation files under § 972.15(4), STATS. We reject this argument because although the trial court did not set forth its reasoning when it weighed the factors we directed it to consider on remand, the record supports the trial court's determination. Finally, Zanelli contends that his statements to his probation officers and a police officer were inadmissible. Because his statements to his probation officers were not incriminating and because he was not "in custody" when he gave a statement to police, we reject his argument. Accordingly, we affirm the trial court's commitment order.

## I. PROCEDURAL BACKGROUND

This is Zanelli's second appeal arising from the same fact situation. In 1992, Zanelli was convicted of two counts of sexual contact with a child contrary to § 948.02(2), STATS. *Zanelli I*, 212 Wis. 2d at 364, 569 N.W.2d at 304. The State filed a petition under ch. 980, STATS., alleging that Zanelli had a mental disorder, pedophilia, and was dangerous because his pedophilia created a substantial probability of future sexual violence. *Id.* Pursuant to § 980.04(2), STATS., the court held a probable cause hearing and found probable cause to believe Zanelli was sexually violent. Zanelli's first trial ended in a hung jury. *Id.* At his second trial, the jury found him sexually violent, and he was committed. *Id.* at 365, 569 N.W.2d at 304.

In *Zanelli I*, we reversed his judgment of commitment and ordered a new trial because we concluded that, under § 980.05(1m), STATS., comments by an expert and the State concerning Zanelli's refusal to be interviewed violated his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Zanelli I*, 212 Wis. 2d at 363, 369–70, 569 N.W.2d at 303, 306. At his

third trial, the one at issue here, a jury again determined that he was sexually violent, and the trial court ordered him committed. Zanelli then filed this second appeal challenging his commitment order. We will set forth additional facts as necessary.

## II. ANALYSIS

### 1. Sufficiency of the Evidence

Zanelli first argues that the evidence was insufficient as a matter of law to support a diagnosis of pedophilia, the alleged mental disorder under ch. 980, STATS., because the State failed to prove beyond a reasonable doubt that he met all the diagnostic criteria for pedophilia in DSM-IV § 302.2. The State responds that it was the jury's province to evaluate the credibility and reliability of the experts who testified that Zanelli suffers from pedophilia. We agree with the State and conclude that a reasonable jury could conclude beyond a reasonable doubt that Zanelli suffers from pedophilia, a mental disorder under § 980.01(2), STATS.

The standard of review for a challenge to a verdict based on the sufficiency of evidence in a ch. 980, STATS., case is as follows:

> [W]e reverse only if the evidence viewed in the light most favorable to the verdict is so insufficient in probative value and force that it can be said as a matter of law that no reasonable trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

*State v. Kienitz*, 221 Wis. 2d 275, 301, 585 N.W.2d 609, 619 (Ct. App. 1998), *rev. granted*. Although Zanelli characterizes this issue as one of sufficiency of the evi-

dence, he neither sets forth the standard of review nor applies it to the facts. With this omission, Zanelli attempts to argue that the evidence was insufficient because due process requires an objective standard for adjudication, here DSM-IV. We will first address whether the evidence was insufficient under the proper standard of review and then address his due process argument.

At trial, the State had the burden of proving that Zanelli had a mental disorder and was dangerous to others because his pedophilia created a substantial probability of future sexual violence. *See* § 980.05(3)(a), Stats. A mental disorder "means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Section 980.01(2), Stats. A sexually violent person is one "who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Section 980.01(7), Stats.

The State's psychologists, Drs. Susan Curran and Ronald Sindberg, both offered testimony that, to a reasonable degree of psychological certainty, Zanelli suffers from pedophilia, a mental disorder in DSM-IV. They further testified that pedophilia fits the ch. 980, Stats., definition of a mental disorder and that Zanelli indeed poses a risk of future sexual violence. To support their opinions, the experts addressed the following three DSM-IV diagnostic criteria for pedophilia:

> A. *Over a period of at least 6 months*, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a

prepubescent child or children (generally age 13 years or younger).

B. The fantasies, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

C. The person is at least age 16 years and at least 5 years older than the child or children in Criterion A.

DSM-IV § 302.2 at 528 (emphasis added).

To reach her diagnosis, Curran relied on evidence of Zanelli's sexual contact with a fifteen-year-old boy and prepubescent boys. Further, this contact did not occur over a consecutive six-month period, but in 1977 and December of 1991 to January of 1992. Curran testified that DSM-IV encourages practitioners not to take a literal approach to the criteria because of variance among individuals and the need to "maintain some flexibility in order to capture the patterns and the essence of the disorder." In keeping with a flexible approach, Curran explained that in her opinion, DSM-IV does not require that the conduct occur over a consecutive six-month period, just "over a period of at least six months." Likewise, Sindberg testified that DSM-IV's drafting committee intended six months to refer "not to a block of six months . . . in one continuous sequence, but the overall picture," and that Zanelli meets this criteria. Further, as the State points out, Curran offered the opinion that "prepubescent" does not have a mandatory age requirement. Zanelli insists that without literal compliance with all three factors, the evidence is insufficient as a matter of law.

■ The evidence was sufficient for a reasonable jury to conclude that Zanelli suffers from pedophilia. Because the jury determines the weight, credibility, and reliability of expert testimony, it was entitled to accept the experts' diagnosis of pedophilia. *See Kienitz*, 221 Wis. 2d at 306–07, 585 N.W.2d at 622. Further, it heard additional evidence to support the diagnosis. The jury heard Zanelli's statements describing his sexual conduct with ten- and eleven-year-old boys. In addition, the jury heard evidence that the walls of Zanelli's studio apartment where the 1991–92 assaults occurred were covered with numerous pictures of young men, perhaps pre-teen, engaged in sexual conduct. Further, a police report reflects that Zanelli expressed a sexual preference for young boys about twelve years old. This evidence was sufficient for the jury to find beyond a reasonable doubt that Zanelli has a mental disorder under § 980.01(2), STATS.

Zanelli cites *State v. Post*, 197 Wis. 2d 279, 310–11, 541 N.W.2d 115, 125 (1995), for the proposition that the experts were not entitled to use their clinical judgment to diagnose him with pedophilia. Rather, he argues that *Post* requires literal compliance with DSM-IV's "mandatory" criteria. Nothing in *Post* supports this reading; in fact, *Post* urges against such a broad reading:

> It is important to stress that . . . definitions [in ch. 980], serve a legal, not medical, function. Even the primary tool of clinical diagnosis in the psychiatric field, the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), warns of a significant risk of misunderstanding when descriptions designed for clinical use are transplanted into the forensic setting.

*See id.* at 305, 541 N.W.2d at 123.

> This risk is due to the "imperfect fit" between the
> law and clinical diagnosis which is exacerbated by
> the legal necessity for information that falls outside
> of that relevant to psychiatric categorical
> designations.

*See id.* at 305 n.13, 541 N.W.2d at 123 n.13.

*Post* does not deal with the sufficiency of the evidence to support a jury's finding of whether the person has a mental disorder, but rather deals with a substantive due process challenge to ch. 980, STATS.[1] We reject Zanelli's invitation to judicially create or "prospectively adopt" a legal definition of pedophilia in all ch. 980 cases. Section 980.05(3)(a), STATS., requires the State to prove beyond a reasonable doubt that Zanelli had a mental disorder and was dangerous to others because the disorder created a substantial probability of future sexual violence. The statute does not confine expert testimony to any specific standard; it does not mandate the type or character of relevant evidence the State may choose to meet its burden of proof. Moreover, adopting Zanelli's argument would dissolve the distinction between legal and behavioral science standards discussed in *Post, see Kienitz*, 221 Wis. 2d at 307, 585 N.W.2d at 622, and remove clinical judgment as a basis for expert testimony.[2] The jury could rely on the

---

[1] The *Post* court addressed whether the term "mental disorder" as defined in ch. 980, STATS., was sufficiently narrowly tailored to survive a strict scrutiny standard of review. *State v. Post*, 197 Wis. 2d 279, 309–10, 541 N.W.2d 115, 125 (1995).

[2] There are "important differences between clinical and legal conceptualizations of mental disease." John K. Cornwell, *Protection and Treatment: The Permissible Civil Detention of Sexual Predators*, 53 WASH. & LEE L. REV. 1293, 1320–22 (1996).

experts' application of DSM-IV. *See id.* at 306–07, 585 N.W.2d at 622. Zanelli is disputing the reliability of the expert's medical conclusion that he suffers from pedophilia, but that is a question for the jury, and one supported by sufficient evidence.

## A. Notice

Relying on *In re Goodson*, 199 Wis. 2d 426, 544 N.W.2d 611 (Ct. App. 1996), and *State v. Ruesch*, 214 Wis. 2d 547, 571 N.W.2d 898 (Ct. App. 1997), Zanelli claims that because proof of pedophilia is an element of the State's case, due process requires that there be some objective standard for determining whether he suffers from pedophilia.[3] Following this logic, Zanelli attempts to persuade us that because § 302.2 of DSM-IV was the only objective standard in the record, the

While DSM is a "uniform diagnostic system" written to aid clinicians in identifying and treating the mentally ill, legal definitions of mental illness vary depending on societal concerns such as moral responsibility, safety, and fair process. *Id.* at 1321. Cornwell concludes that it is inappropriate to "graft one system completely onto the other." *Id.* Other reasons also support the inappropriateness of such a reliance. *Id.* DSM is sometimes revised; therefore, using DSM to define legal mental illness may lead to inconsistent results. *Id.* at 1321–22. In addition, diagnostic categories may be "as much a reflection of the beliefs and values of the drafters of the manual as they are of scientific data." *Id.*

[3] Zanelli does not define his due process argument as substantive or procedural. However, given that the supreme court has rejected a substantive due process argument to the definition of "mental disorder" in *Post* and given that Zanelli uses the language of a procedural due process argument, "objective standard for adjudication," we will address his argument as raising a procedural due process concern.

State was required to prove beyond a reasonable doubt that all criteria were met and that its failure to prove all the diagnostic criteria elements renders the evidence insufficient as a matter of law. The cases do not persuade us that ch. 980, STATS., requires that Zanelli have notice of a "complete or accurate list of the items" the State must show on the mental disorder element.

First, *Goodson* is entirely inapplicable. The issue in *Goodson* was whether to vacate an order for supervised release under ch. 980, STATS., because the Milwaukee district attorney received no notice of the court's hearings under § 980.015, STATS., and the police department received no notice under § 980.06(2)(d), STATS.[4] *Id.* at 437–38, 544 N.W.2d at 616. These statutes do not address "notice" to persons the State seeks to commit under ch. 980; *Goodson* is therefore inapplicable to Zanelli's argument.

Second, Zanelli cites to the procedural due process argument on vagueness grounds in *Ruesch*, 214 Wis. 2d at 560, 571 N.W.2d at 904. The constitutional foundation to a vagueness challenge is the due process notice requirement. *See Zanelli I*, 212 Wis. 2d at 374, 569 N.W.2d at 308. A statute is void for vagueness if it does not: (1) provide "fair notice" of the prohibited conduct; and (2) provide an objective standard for enforcement of its violations. *See Ruesch*, 214 Wis. 2d at 560, 571 N.W.2d at 904. Zanelli disputes the second prong, arguing that because proof of pedophilia is an

---

[4] Section 980.015, STATS., requires notice to the district attorney in the county of conviction or the county to which prison officials propose to release the person. *See In re Goodson*, 199 Wis. 2d 426, 431, 544 N.W.2d 611, 613 (Ct. App. 1996). Section 980.06(2), STATS., requires notice of supervised release to the municipal police department and county sheriff for the municipality and county in which the person will be residing.

557

element of the State's case, due process requires that there be an objective standard to determine whether he is afflicted with pedophilia. For Zanelli, that means a "level playing field," one in which "everyone can determine in advance of trial exactly what must be shown by the State through the simple expedient of looking up the diagnostic criteria for the relevant mental disorder in DSM-IV." This simply recasts the argument we have already rejected.

If Zanelli is alleging that there must be a legal objective standard, then, as we have already stated, the statute contains the objective standard for enforcement, namely the definition of mental disorder, § 980.01(2), STATS. In any event, Zanelli does not contend that the definition of "mental disorder" is vague. If Zanelli is arguing that there is no objective medical standard, the experts were entitled to testify to their medical conclusions, and the jury had a right to accept their medical diagnoses. Any conflicts, inconsistencies, or questions about reliability go to the weight and credibility of the testimony, *see State v. Pruitt*, 95 Wis. 2d 69, 82, 289 N.W.2d 343, 349 (Ct. App. 1980), not whether he was denied a due process right to notice. Accordingly, we reject Zanelli's argument that he received inadequate notice because there was no "objective standard."

*B. Right to Confrontation*

We also reject Zanelli's argument that without an objective standard, he was denied his constitutional right to confront and cross-examine witnesses pursuant to *State v. Thomas*, 144 Wis. 2d 876, 893, 425 N.W.2d 641, 647 (1988). The Sixth Amendment right to

confrontation, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST amend. VI; *see also* art. I, § 7, WIS. CONST. (noting that the accused shall enjoy the right "to meet the witnesses face to face"). The primary objective of the confrontation clause is to promote the reliability of the evidence against a criminal defendant by rigorously testing it in an adversarial proceeding before a jury. *See Maryland v. Craig*, 497 U.S. 836, 845 (1990). To accomplish this objective, the defendant must have the opportunity to meaningfully cross-examine witnesses. *See Thomas*, 144 Wis. 2d at 893, 425 N.W.2d at 647. Confrontation also permits the jury to observe the witness's demeanor while testifying and assess credibility. *Id.* at 887, 425 N.W.2d at 645. In addition, confrontation ensures that a witness gives testimony under oath. *See id.*

We reject Zanelli's argument that he had no meaningful opportunity for cross-examination because the State's experts used "purely subjective diagnostic criteria." At trial, Zanelli's counsel cross-examined the State's experts at length about their diagnostic methods and attempted to impeach their credibility. All witnesses testified under oath in the jury's presence, enabling the jury to assess the witnesses' credibility. All the objectives of the right to confrontation were met here. *See id.* We see no violation of Zanelli's confrontation rights.

## 2. Jury Instruction on "Substantial Probability"

Zanelli next claims that the trial court committed reversible error when it refused to give a jury instruc-

tion defining the term "substantial probability" as used in § 980.01(7), STATS. He argues that under *Zanelli I*, a definition of "substantially probable" is necessary to ensure jury unanimity and to prevent a portion of the statutory language from being rendered meaningless. The State correctly points out that *Zanelli I* controls and disposes of this argument.

We addressed this precise issue in *Zanelli I*, 212 Wis. 2d at 375–76, 569 N.W.2d at 307–08, and held that the trial court had the discretion to refuse an instruction defining "substantial probability." *Id.*; *see also* WIS J I—CRIMINAL 2502, cmt. 15 (noting that "defining the term in the manner suggested by Zanelli would have been within the trial court's discretion"); *Kienitz*, 221 Wis. 2d at 292 n.5, 585 N.W.2d at 616 n.5 (explaining that in *Zanelli I*, we stated that although due process did not require an instruction defining substantial probability, the court had the discretion to give such an instruction). Likewise, the trial court here had the discretion to refuse the requested instruction on substantial probability, and as we said in *Zanelli I* and reiterate here, this failure is not reversible error. *See id.* at 375–76, 569 N.W.2d at 307–08.

Nevertheless, Zanelli maintains that under *Burch v. American Family Mut. Ins. Co.*, 198 Wis. 2d 465, 470 n.1, 543 N.W.2d 277, 279 n.1 (1996), we may disregard our holding in *Zanelli I* because the concurrence provides "good reason" for reconsidering the issue. The concurrence in *Zanelli I*, however, is just that, a concurrence. While Zanelli may not agree with our holding in *Zanelli I*, we are bound by our own court's decisions, *see Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246,

256 (1997), and we see no "good reason" for reconsidering the issue.

## 3. Presentence Investigation Confidentiality

Zanelli also insists that the trial court erroneously exercised its discretion by applying § 972.15(4), STATS.,[5] and admitting the presentence investigation reports (PSI reports) into evidence and allowing the expert witnesses to rely on them. Zanelli insists that § 972.15(4) permits disclosure only after the trial court authorizes it and that "retroactive authorization" clearly violates the statute. We reject these arguments.

In *Zanelli I*, 212 Wis. 2d at 377–78, 569 N.W.2d at 309, we held that the trial court improperly applied § 972.15(5), STATS.,[6] to justify using the PSI reports in

---

[5] Section 972.15(4), STATS., provides that: "After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court."

[6] Section 972.15(5), STATS., provides, in part, that:

> The department may use the presentence investigation report for correctional programming, parole consideration or care and treatment of any person sentenced to imprisonment or the intensive sanctions program, placed on probation, released on parole or committed to the department under ch. 51 or 971 or any other person in the custody of the department or for research purposes.

In *State v. Zanelli*, 212 Wis. 2d 358, 377–78, 569 N.W.2d 301, 309 (Ct. App. 1997) (*Zanelli I*), we concluded that the trial court erred by applying this statute to allow the department to use the presentence investigation reports for " 'care and treatment' to justify use of the information in the PSI reports in the petition, or as evidence at trial from which the jury finds the facts to support a commitment."

561

the petition or as evidence at trial. Consequently, on remand, we directed the trial court to use its discretionary authority under § 972.15(4), which allows PSI reports to be made available "upon specific authorization of the court." *See id.* at 378, 569 N.W.2d at 309. In addition, we set forth several factors a trial court should consider in making this determination: (1) the relevancy of the information in the PSI reports; (2) whether the evidence contained in the PSI reports is available from other sources; (3) the probative value of the evidence and its potential for unfair prejudice; and (4) all other relevant factors.

■

We review a trial court's decision to admit evidence for erroneous exercise of discretion. *See State v. Bellows*, 218 Wis. 2d 614, 627, 582 N.W.2d 53, 59 (Ct. App. 1998). A trial court exercises the appropriate discretion when it examines the relevant facts, applies a proper standard of law, uses a demonstrative rational process, and reaches a conclusion that a reasonable judge could reach. *See State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30, 36 (1998).

On remand, the State moved for an order allowing the use of the PSI reports by State psychologists and at trial. After the trial court heard oral argument on the matter at a pretrial hearing, it expressly addressed the factors we had directed it to consider in exercising its discretion under § 972.15(4), STATS. First, it determined that the PSI reports were highly relevant to whether Zanelli suffered from a mental disorder and to whether there was a substantial probability of future sexual violence. Second, it concluded that information in the PSI reports was not available from other sources. Third, it reasoned that the probative value of the information in the PSI reports was "very high" regarding

"the issues of inquiry" and that while admitting them would prejudice Zanelli, such prejudice would not be unfair. In other words, the trial court found that the PSI reports' probative value outweighed their prejudicial effect.

■

Although the record reflects that the trial court followed our directions on remand and applied the proper standards, it failed to provide the reasons for its determinations. When a trial court fails to set forth its reasoning, we will independently review the record to determine whether it provides a basis for the trial court's exercise of discretion. *See State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). In addition, we generally look for reasons to sustain discretionary determinations, *see Steinbach v. Gustafson,* 177 Wis. 2d 178, 185–86, 502 N.W.2d 156, 159 (Ct. App. 1993), and we will uphold the trial court's decision if there are facts in the record to support the decision. *See State v. Mainiero,* 189 Wis. 2d 80, 94–95, 525 N.W.2d 304, 310 (Ct. App. 1994).

First, the record supports the trial court's determination that the evidence from the PSI reports was relevant. Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Section 904.01, STATS. The 1977 PSI report contains information regarding Zanelli's sexual conduct with young boys, conduct for which he was convicted and sentenced. Likewise, the 1992 PSI report also contains information about Zanelli's continued sexual contact with young boys, conduct for which he was also convicted and sentenced. A report by Dr. Howard Porter, attached to the 1992 PSI report, notes that Zanelli "has

found adolescent boys sexually attractive for years." Such information is highly relevant to show that Zanelli is a sexually violent person under ch. 980, STATS.

Second, under § 904.03, STATS., because this information was highly probative, we also agree with the trial court that the probative value of this evidence was not outweighed by its prejudicial effect.[7] Further, the PSI reports were introduced at trial through the probation agents who drafted them, and both the State and Zanelli's counsel used the PSI reports when examining the agents. Porter also referred to the reports during his testimony, while Curran testified that the PSI reports were part of the material she reviewed in evaluating Zanelli. However, during deliberations, the trial court denied the jury's request to view the exhibits during deliberations, based in part on the nature of the exhibits. Thus, the trial court limited the use of the PSI reports at trial. Third, Zanelli did not dispute, either at the motion hearing or on appeal, that this information was not available from other sources. Thus, we are satisfied that the trial court reasonably exercised its discretion by disclosing the PSI reports.

Zanelli argues, however, that *State ex rel. Herget v. Waukesha County Cir. Ct.*, 84 Wis. 2d 435, 267 N.W.2d 309 (1978), and *State v. Bellows*, 218 Wis. 2d 614, 582 N.W.2d 53 (Ct. App. 1998), control our analysis. He claims that *Herget* and *Bellows*, which both deal with release of juvenile records, stand for the proposition that § 972.15(4), STATS., was violated when the "state

---

[7] Section 904.03, STATS., provides that relevant evidence may be excluded if any of the following outweigh its probative value: danger of unfair prejudice, confusion of the issues, or misleading the jury or consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

simply passed the confidential records around without bothering to obtain or even apply for a court order until after the prior decision of the Court of Appeals in this case." Such "retroactive authorization," he argues, violates the language of § 972.15(4) that release can only be made "upon specific authorization of the court," language Zanelli reads to require a court order. Because both cases are factually distinguishable and the policies underlying both are distinct, we are unpersuaded.

*Herget* involved the release of juvenile records under § 48.26(1), now § 48.396(1), STATS., which provides for confidentiality of juvenile records. In contrast, this is a ch. 980, STATS., case. Contrary to Zanelli's contention, there is nothing in *Herget* or *Bellows* remotely suggesting that *Herget*'s rationale and analysis extends to all confidentiality statutes, including § 974.15(4), STATS., which Zanelli states does not give the court guidelines to exercise its discretion when disclosure is requested. *Bellows* does note that the "most comprehensive discussion *on this topic* of confidentiality records" is found in *Herget*, but the *Bellows* court was clearly referring to the release of juvenile records. *See Bellows*, 218 Wis. 2d at 629, 582 N.W.2d at 60. In addition, his argument fails because, in *Zanelli I*, we gave the trial court the guidelines Zanelli argues are missing from § 974.15(4).

In *Bellows*, we reversed child neglect convictions in the interests of justice based on two factors: (1) undue surprise to the defense when the State presented evidence on the morning of trial without notice; and, (2) the trial court's failure to inquire and pursue the defendant's claim that the trial court did not follow the appropriate process in obtaining release of CHIPS petitions from the ch. 48, STATS., court. *Id.* at 626–27, 582 N.W.2d at 59. Our concerns in *Bellows* are

not present here. There was no undue surprise, and the trial court indeed followed the procedure we set forth in *Zanelli I* for release of the PSI reports under § 972.15(4), STATS.[8]

We further reject his argument that *Herget* and *Bellows* are applicable because the policies underlying both statutes are similar. While the best interests of the juvenile governed the discovery of juvenile records at the time *Herget* was decided, the State's dual interests under ch. 980, STATS., are protection of the community from sexual predators and care and treatment of sexual predators. *See Post*, 197 Wis. 2d at 302–03, 541 N.W.2d at 122. Accordingly, no "parallel" policies support extending *Herget*'s and *Bellows*' scope to the admissibility of PSI reports in ch. 980 cases. Because the trial record supports the trial court's exercise of discretion, we conclude that the trial court properly exercised its discretion in releasing the PSI reports.

---

[8] Zanelli makes a number of arguments based on his premise that *State ex rel. Herget v. Waukesha County Cir. Ct.*, 84 Wis. 2d 435, 267 N.W.2d 309 (1978), and *State v. Bellows*, 218 Wis. 2d 614, 582 N.W.2d 53 (Ct. App. 1998), are controlling here. He argues that the trial court's failure to conduct an in-camera review of the presentence investigation reports was an erroneous exercise of discretion; that the trial court failed to recognize that confidentiality is the rule and disclosure the exception; that the trial court's order was "too general"; and that the State did not show a particularized need for all material in the PSI reports. Because we conclude that *Herget* and *Bellows* are factually distinguishable, we need not address the arguments based on those cases. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (only dispositive issues need be addressed).

## 4. Admission of Zanelli's Statements to his Probation Officers and Police

### A. Statements to His Probation Officers

Next, Zanelli argues that his statements to probation officers, Joe Coffey and James Miller, were compelled by the threat of loss of liberty associated with both the presentence investigative process and probation supervision. He also challenges the admissibility of his statements to Porter who worked with his probation officers. Zanelli contends that the statements are involuntary and therefore inadmissible under *State v. Thompson*, 142 Wis. 2d 821, 419 N.W.2d 564 (Ct. App. 1987), and *State v. Pickett*, 150 Wis. 2d 720, 442 N.W.2d 509 (Ct. App. 1989). Because we conclude that his statements were not incriminating, the trial court did not err by admitting them.[9]

---

[9] In denying his motion in limine to exclude the statements, the trial court found the statements admissible under § 907.03, STATS., because they formed the basis of the opinions of the State's experts. Zanelli finds two faults with the trial court's decision. First, he claims that no rule of evidence can override his constitutional guarantee of due process of law. He also cites *State v. Weber*, 174 Wis. 2d 98, 106–07, 496 N.W.2d 762, 766 (Ct. App. 1993), for the proposition that § 907.03 allows an expert to base his opinion on inadmissible evidence "but that this use of the hearsay or other inadmissible evidence does not automatically render it admissible under the statute." He then concludes that his statements to the probation officers and Porter were inadmissible. Zanelli fails to tell us how this case applies to the facts here, rendering his argument undeveloped. We will therefore not address it. *See Shannon v. Shannon*, 150 Wis. 2d 434, 446, 442 N.W.2d 25, 31 (1989).

Under the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST., amend. V; *Zanelli I*, 212 Wis. 2d at 371, 569 N.W.2d at 306–07. *Minnesota v. Murphy*, 465 U.S. 420, 435 (1984), and *Thompson*, 142 Wis. 2d at 832, 419 N.W.2d at 568, establish that if probationers are required to choose between giving answers that will incriminate them in pending or subsequent criminal prosecution and losing their conditional liberty as a price for exercising their right to remain silent, the State may not use their answers for any evidentiary purpose in the criminal prosecution.

Zanelli never specifies the statements he is challenging and has not set forth any facts to establish that he was compelled to choose between giving answers that would incriminate him and risking revocation of his conditional liberty. A review of the record reveals that Coffey, Miller, and Porter testified regarding the 1977 and 1991–92 matters for which Zanelli had already been convicted, so such statements could not subject Zanelli to future criminal prosecution. Further, any statements about Zanelli's background, including his employment and family, could not, by themselves, incriminate Zanelli in a subsequent criminal prosecution. The fact that such statements can be used in a ch. 980, STATS., case does not mean that the statements could incriminate him in a pending or subsequent criminal prosecution as ch. 980 is a civil commitment proceeding, not a criminal proceeding. *See State v. Carpenter*, 197 Wis. 2d 252, 270–72, 541 N.W.2d 105, 112–13 (1995). Accordingly, the statements were admissible.

## B. Statement to Police

Zanelli also argues that his 1977 statement to police was inadmissible at trial because there was no evidence introduced to prove that he knowingly and intelligently waived his *Miranda* rights. We conclude that Zanelli was not in custody when he gave the 1977 statement; therefore, *Miranda* warnings were not required.

Before determining whether Zanelli was "in custody" for Miranda purposes, we must first address the State's argument that under *In re Thomas J.W.*, 213 Wis. 2d 264, 570 N.W.2d 586 (Ct. App. 1997), any failure to give *Miranda* warnings does not result in suppression of a statement in a noncriminal proceeding. In *Zanelli I*, we noted that while a commitment proceeding under ch. 980, STATS., is a civil proceeding, § 980.05(1m), STATS.,[10] renders all the rules of evidence and constitutional rights available to a criminal defendant applicable to a person who is the subject of a petition under ch. 980. *Id.* at 370–71, 569 N.W.2d at 306. We then reversed his judgment of conviction and ordered a new trial because we concluded that, under § 980.05(1m), comments by an expert and the State at trial concerning Zanelli's refusal to be interviewed violated his right to remain silent under *Miranda*. *Zanelli I*, 212 Wis. 2d at 363, 369–70, 569 N.W.2d at 303, 306. While the State distinguishes *Zanelli I* on its facts, § 980.05(1m) and *Zanelli I* give Zanelli a constitutional

---

[10] Section 980.05(1m), STATS., provides that: "At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person."

right against self-incrimination. Therefore, we now turn to whether Zanelli was in custody.

In 1977, Zanelli gave a statement to Officer William Appleton in which Zanelli graphically described his sexual conduct with several boys. At the *Miranda* hearing, the trial court concluded that because the State had met its burden to show that Zanelli received *Miranda* warnings, it was unnecessary to decide whether Zanelli was "in custody" when he gave the statement.[11]

Whether a person is in custody for *Miranda* purposes is a question of law we review de novo. *See State v. Buck*, 210 Wis. 2d 115, 124, 565 N.W.2d 168, 171 (Ct. App. 1997). To determine if Zanelli was in custody triggering *Miranda* warnings, we look at the totality of the circumstances, *State v. Gruen,* 218 Wis. 2d 581, 593–94, 582 N.W.2d 728, 732–33 (Ct. App. 1998), and ask if a reasonable person would have considered himself in custody given the degree of restraint under the circumstances. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *State v. Koput*, 142 Wis. 2d 370, 380, 418 N.W.2d 804, 808 (1988). We determine if a reasonable person viewing the situation objectively would conclude that he or she was not free to leave. *See Koput,* 142 Wis. 2d at 380, 418 N.W.2d at 808. In addition, we consider the purpose, length, and place of the interrogation. *See State v. Leprich*, 160 Wis. 2d 472, 477, 465 N.W.2d 844, 846 (Ct. App. 1991). Although questioning

---

[11] Because we conclude that Zanelli was not in custody for *Miranda* purposes, we need not address Zanelli's argument that the police did not give him his *Miranda* rights and that his statement was involuntary. *See Sweet*, 113 Wis. 2d at 67, 334 N.W.2d at 562; *see also Miranda v. Arizona*, 484 U.S. 436 (1966).

at the police station will demonstrate some coercion, no *Miranda* warnings are required unless the suspect's freedom has been restricted to place him in custody. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

Zanelli was at the police station when he gave the 1977 statement. At the *Miranda* hearing, Officer Appleton noted that his testimony was based on an event that happened over twenty years ago, but that based on his recollection of the events: (1) he did not recall how Zanelli arrived at the station; (2) Zanelli was not under arrest when he made the statement; and (3) Zanelli was allowed to leave the station after he gave the statement. Zanelli did not testify regarding his recollections of the events surrounding this 1977 statement, and the trial court gave Zanelli's counsel the opportunity to present any additional argument or testimony, but she declined. Zanelli offered no testimony to refute Appleton's testimony. Under the totality of the circumstances, Zanelli was not in custody because he was free to leave and not under arrest. A reasonable person in that situation would not consider himself in custody. *See Koput*, 142 Wis. 2d at 380, 418 N.W.2d at 808. Thus, based on this evidence adduced at the *Miranda* hearing, we conclude that Zanelli was not "in custody."

In summary, we conclude that sufficient evidence supports the diagnosis of pedophilia; the trial court was not required to define substantial probability; the admission of the PSI reports was not error; and Zanelli's statements to his probation officers and a police officer were admissible.

*By the Court.*—Order affirmed.