State of Wisconsin, Plaintiff-Appellant,
v.
Mark Steven Tracy, Defendant-Respondent.
No. 03-2519-CR.
Court of Appeals of Wisconsin.
Opinion Filed: February 18, 2004.
NETTESHEIM, J.[1]
¶1. The State of Wisconsin appeals from a circuit court order granting a motion to suppress filed by Mark Steven Tracy. Based on State v. Leprich, 160 Wis. 2d 472, 465 N.W.2d 844 (Ct. App. 1991), we reverse and remand for further proceedings on the criminal complaint.

FACTS AND PROCEDURAL HISTORY
¶2. The State filed a criminal complaint against Tracy alleging disorderly conduct pursuant to Wis. Stat. § 947.01 and intimidation of a victim pursuant to Wis. Stat. § 940.44(1). The charges resulted from a domestic dispute involving Tracy and his wife, Deborah. Tracy filed a motion to suppress un-Mirandized[2] statements that he made to the investigating officer who responded to the incident. The issue is whether Tracy was in custody when he made the statements.
¶3. The relevant facts of the incident are not in dispute. We take them from the testimony of City of Oconomowoc Police Officer Steven Grabowski, the sole witness at the suppression hearing. On January 22, 2003, at approximately 7:33 p.m., Grabowksi and another officer, Mark Schrang, were dispatched to the Tracy residence to investigate a report of a 911 "hang-up" call. Upon arrival, the officers encountered Tracy at the doorway and advised him of the reported "hang-up" call. Tracy responded that he did not make the call and that he did not know that such a call had been made. At this same time, Deborah was standing behind Tracy, "shouting or talking over him," stating that she had placed the call, that Tracy had ripped the phone off the wall and that he had thrown a picture.
¶4. Grabowski explained that it was department policy to investigate a 911 "hang-up" call and that the officers were there to investigate the matter "to see if anything is wrong or what the nature of call was." The officers then entered the residence to speak with Tracy and Deborah.[3] Grabowski spoke with Tracy while Schrang spoke with Deborah in a different room. Prior to questioning Tracy, Grabowski did not deliver any Miranda warnings.
¶5. In response to Grabowski's questions, Tracy stated that he was tired when he came home from work and that he had a few beers. He was ready to go to bed when Deborah came home and started a conversation with him about their financial difficulties. Tracy did not wish to talk with Deborah, but she kept on "bitching" and he lost his temper.
¶6. Following this conversation, Grabowski went to the other room to "get [Deborah's] side of the story." In the meantime, Tracy remained with another police officer who had arrived on the scene. After speaking with Deborah and after comparing the statements she had given the officers, Grabowksi determined that Deborah had made the 911 call and that Tracy was the primary aggressor in the incident. Grabowski then arrested Tracy, transported him to the police department where he was Mirandized. Tracy, however, declined to answer any questions.
¶7. During the events at the Tracy residence, Grabowski was wearing his service revolver but he did not brandish the weapon. At no time did Grabowski tell Tracy that he was under arrest, and he did not place Tracy in handcuffs until he later arrested Tracy. Nor did Grabowski make any threats to Tracy. However, Grabowski acknowledged in his testimony that he would not have allowed Tracy to leave the residence prior to arresting him because he was still investigating the matter.
¶8. Ruling that Tracy was not free to leave and therefore in custody, the trial court suppressed Tracy's statements. The State appeals.

DISCUSSION
¶9. Having set out the facts of this case, we set out the facts of Leprich, the case which we conclude squarely governs the custody issue before us.
¶10. Deputy Sheriff Robert Bloyer was dispatched to a domestic dispute at the trailer home of Gordana and John Leprich. Leprich, 160 Wis. 2d at 474. When he arrived, another officer had already removed John from the home. Id. John told Bloyer that Gordana had been angry with him and thrown a stereo speaker at him, hitting him on the arm and leaving a bruise. Id.
¶11. Bloyer then entered the trailer home to speak with Gordana. Id. Without the benefit of any Miranda rights, Gordana told Bloyer that she had become angry with John while fixing a meal, that she had thrown the stereo speaker at him, and that John had thrown the speaker back at her. Leprich, 160 Wis. 2d at 475. Bloyer noticed broken furnishings and food scattered about the trailer home. Id.
¶12. Bloyer asked Gordana whether, if arrested, she was comfortable leaving their child with John. Gordana answered that she was. Id. Bloyer then informed John and Gordana that both would be charged, but only Gordana would be arrested. Id.
¶13. The State charged Gordana with disorderly conduct and she responded with a motion to suppress her statements on the grounds that she was in custody and entitled to the Miranda warnings before Bloyer questioned her. Leprich, 160 Wis. 2d at 475-76.
¶14. The court of appeals held that Gordana was not in custody for purposes of Miranda. The court stated, "Not every on-the-scene questioning by a police officer need be preceded by a Miranda warning. When general on-the-scene questions are investigatory rather than accusatory in nature, the Miranda rule does not apply." Leprich, 160 Wis. 2d at 477 (citation omitted). Quoting from Miranda, the court further observed, "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." Leprich, 160 Wis. 2d at 477; Miranda v. Arizona, 384 U.S. 436, 477-78 (1966).
¶15. In assessing custody, Leprich noted that a court must examine the totality of the circumstances, including the defendant's freedom to leave the scene, and the purpose, place and length of the interrogation. Leprich, 160 Wis. 2d at 475. Applying those factors, the court determined that the purpose of Bloyer's questioning was investigatory. Id. at 478. The court took particular note of Wis. Stat. § 968.075(3)(a)1.b, which requires a police officer responding to a domestic abuse report to make a determination as to which spouse was the primary aggressor. This statute provides:
When the officer has reasonable grounds to believe that spouses, former spouses or other persons who reside together or formerly resided together are committing or have committed domestic abuse against each other, the officer does not have to arrest both persons, but should arrest the person whom the officer believes to be the primary physical aggressor.
¶16. Leprich also observed, "While a person may be deemed to be in custody even in their own home, `such is not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'" Leprich, 160 Wis. 2d at 478 (citation omitted).
¶17. Finally, Leprich noted, "At no time during the conversation was [Gordana] told that she was not free to leave, nor was her movement in any way restricted." Id. at 479. Responding to Gordana's reliance on Bloyer's testimony that he would not have allowed her to leave if she had asked, the court stated, "However, Bloyer's subjective intentions are not relevant to the determination of whether defendant was in custody." Id.
¶18. This case is virtually on all fours with Leprich. The police were responding to a 911 "hang-up" call and immediately upon confronting Tracy and Deborah at the doorway of the residence learned that the call was the product of a possible domestic abuse incident. Pursuant to Wis. Stat. § 968.075(3)(a)1.b, the officers were entitled to investigate to learn if Deborah's accusation was true and to determine if Tracy truly was the primary aggressor.[4] The investigation and questioning took place in the parties' residence, a less coercive setting than that associated with most custodial interrogations. Grabowski made no threats against Tracy during the interrogation. Although armed, Grabowski never brandished the weapon. Nor did he place Tracy in handcuffs or engage in another form of overt physical restraint. Finally, although Grabowski would not have allowed Tracy to leave had he asked, the unexpressed subjective intent of the officer is not relevant to the custody inquiry.[5]
¶19. Under Leprich, we conclude that Tracy was not in custody for purposes of Miranda. While the State argued that Tracy was not in custody, unfortunately, the State did not cite Leprich to the trial court in its arguments on the motion to suppress or in its motion for reconsideration. Had it done so, the court would likely have ruled differently. We also acknowledge that the question of custody under these kinds of circumstances presents a very close question. If we were writing on a clean slate, we might well agree with the trial court's ruling. However, we are bound by Leprich, a prior published decision of the court of appeals. See Cook v. Cook, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).
By the Court.Order reversed and cause remanded.
NOTES
[1] This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version.
[2] Miranda v. Arizona, 384 U.S. 436 (1966).
[3] The evidence is uncertain as to the circumstances surrounding the officers' entry into the residence. Grabowski testified that he asked if the officers could come into the residence. Grabowski's incident report states that he asked Tracy to step into the residence. While noting the conflict, the trial court did not expressly resolve it. In any event, Tracy did not challenge the officers' entry into the residence. Rather, he contended that circumstances surrounding his interrogation amounted to custody within the meaning of Miranda.
[4] Tracy attempts to distinguish State v. Leprich, 160 Wis. 2d 472, 465 N.W.2d 844 (Ct. App. 1991), arguing that there was no need for further investigation because Deborah had already identified Tracy as the primary aggressor. However, Tracy overlooks that the same situation existed in Leprich-upon the arrival of the police, John advised that Gordana had thrown a stereo speaker at him. Id. at 474. Despite that fact, the Leprich court held that the police were legitimately entitled to investigate further and to determine who was the primary aggressor under Wis. Stat. § 968.075(3)(a)1.b.
[5] There is one factual difference between Leprich and this case which strengthens our holding. In Leprich, Bloyer's interrogation of Gordana included references to the impending arrest of Gordana. Leprich, 160 Wis. 2d at 475. Arguably, that reference could suggest that Gordana was not free to leave. Nonetheless, the Leprich court concluded that Gordana was not in custody. Here, Grabowski never alluded to the prospect of arrest during his interrogation of Tracy.