COURT OF APPEALS
DECISION
DATED AND FILED

December 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP141**

STATE OF WISCONSIN

Cir. Ct. No. 2015GN14

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF M. L.:

DOUGLAS COUNTY,

   PETITIONER-RESPONDENT,

 V.

M. L.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

¶1      HRUZ, J.[1] Mason[2] appeals an order continuing his protective placement pursuant to WIS. STAT. § 55.18. Mason asserts that the circuit court lost competency over this matter due to Douglas County failing to timely file its petition and report as required by § 55.18(1). Additionally, Mason argues that the County presented insufficient evidence to continue his protective placement by failing to present a witness qualified to opine on the four elements required by WIS. STAT. § 55.08(1).

¶2      We conclude that Mason forfeited his right to object to the timeliness of the annual petition and its impact on the circuit court's competency. We also conclude that the record contains sufficient evidence demonstrating that Mason continues to meet the requirements for protective placement. Accordingly, we affirm.

**BACKGROUND**

¶3      Since 2013, Mason has been hospitalized in an inpatient setting. In 2015, Mason was adjudicated incompetent, was protectively placed, and was appointed a guardian ad litem pursuant to WIS. STAT. §§ 55.02, 55.08, and 55.10.[3]

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] A summary hearing was held in 2017 on a petition for an annual review of the order for involuntary administration of psychotropic medications. The circuit court found that Mason continued to meet the standards for an order for involuntary administration of psychotropic medication under WIS. STAT. § 55.14(8). A full due process hearing was held in 2020 on a petition for an annual review of protective placement. The court found that Mason continued to meet the standards for protective placement due to serious and persistent mental illness and other like incapacities, and that protective placement was the least restrictive environment consistent with Mason's needs. The court then ordered that protective placement continue in the same facility.

In June 2021, the County filed a petition for Mason's continued protective placement, which is the petition at issue in this case. A full due process review hearing was held in September 2021. The sole witness at the hearing was Rachael Jacobson, a community support manager employed at the secure care facility where Mason resided.

¶4 Jacobson testified that Mason had been diagnosed with "a serious and persistent mental illness." She also stated that Mason was diagnosed with polydipsia, a condition where he "[consumes] things that should not be consumed," including "hygiene supplies," "cleaning supplies," "art mediums," and "drywall." Further, the polydipsia caused Mason to "consume fluids in excess," which could adversely affect his health, and necessitated Mason's mental health facility to set a water restriction for him. Jacobson testified that Mason experienced daily paranoid or delusional thinking. Upon being asked if Mason would be a risk to himself or others if he were allowed into the community, Jacobson responded:

> I don't feel that [Mason] would make the best safe choices for himself, due to historical things that he's done in his past with—pertaining to drug use and things like that. I also do not believe that the community would be safe, due to his historical behavioral challenges where he has aggressed others and caused injury to them.

¶5 The record before the circuit court at the 2021 hearing contained a comprehensive evaluation written by Dr. Elliot Lee. This evaluation was prepared for Mason's 2020 annual review hearing, during which the court took judicial notice of the evaluation. The evaluation diagnosed Mason with schizoaffective disorder, polydipsia, and an unknown substance-induced mild neurocognitive disorder. The evaluation also noted that Mason's schizoaffective disorder "is likely to be permanent." The record before the court at the 2021 hearing also

contained annual reports on Mason's condition from 2016 through 2021. The 2016 report stated that Mason's mental health had not improved in the last year. The 2017 report stated that Mason's health had worsened over the year prior. The 2018-2021 reports stated that there were no changes in Mason's health.

¶6 At the end of the 2021 hearing, the circuit court found that Mason continued to be in need of protective placement, ordered Mason's protective placement to be continued, and concluded that his current residency was the least restrictive placement available for him. The court stated that Mason "does have a primary need for residential … placement because he can't care for himself." The court further explained that Mason "creates a substantial risk of harm to himself and others" and that Mason demonstrates an "inability to control himself." The court described Mason as being in "a permanent situation as we [have] seen in the past."

¶7 Mason now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

¶8 Mason argues that the circuit court lost competency to hear the County's petition for his continued protective placement due to the County failing to comply with the timing requirement to file a report for annual review pursuant to WIS. STAT. § 55.18(1). Mason further argues that the County presented insufficient evidence to establish that he continues to meet the standards for protective placement.

## I. Circuit Court Competency to Hear Petition for Continued Protective Placement

¶9     Whether the circuit court lost competency due to the timing requirement in WIS. STAT. § 55.18(1) presents an issue of statutory construction, which we review de novo.  *See **State ex rel. Robinson v. Town of Bristol***, 2003 WI App 97, ¶12, 264 Wis. 2d 318, 667 N.W.2d 14.  Under § 55.18(1), a county must "annually review the status of each individual who has been provided protective placement."  Sec. 55.18(1)(a).  The statute sets forth the process that a county must follow to initiate that review:

> [n]ot later than the *first day of the 11th month after the initial order is made* for protective placement for an individual and, except as provided in par. (b), annually thereafter, the county department shall do all of the following:
>
> 1.  File a report of the review with the court that ordered the protective placement….
>
>    ….
>
> 2.  File with the court under subd. 1. a petition for annual review by the court of the protective placement ordered for the individual.
>
> 3.  Provide the report under subd. 1. to the individual and the guardian of the individual, and to the individual's agent under an activated power of attorney for health care, if any.

Sec. 55.18(1)(a) (emphasis added).

¶10     It is undisputed that the order for Mason's continued protective placement from the prior year was entered on June 30, 2020.  Pursuant to either WIS. STAT. § 55.18(1)(a) or (b), the County was required to file its petition to continue Mason's protective placement, or initiate a review leading to the same,

no later than May 1, 2021.[4]  The County filed its petition for annual review of Mason's protective placement on June 17, 2021.  Even if we assume, without deciding, that the County failed to comply with the statutory time limit in § 55.18(1)(a), we conclude that Mason forfeited his competency argument by failing to timely object to the circuit court proceeding with the review hearing. *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.

¶11     "Whether a party has forfeited its right to raise an issue on appeal is a question of law that we review independently."  ***Loren Imhoff Homebuilder, Inc. v. Taylor***, 2022 WI 12, ¶10, 400 Wis. 2d 611, 970 N.W.2d 831.  "Wisconsin courts have 'continuously emphasized the importance of making proper objections as a prerequisite to assert, as a matter of right, an alleged error on appeal.'"  ***State v. Saunders***, 2011 WI App 156, ¶30, 338 Wis. 2d 160, 807 N.W.2d 679 (citation

---

[4] The parties disagree on whether WIS. STAT. § 55.18(1)(a) or (1)(b) applies to Mason's recommitment.  Section 55.18(1)(a) states, "Not later than the first day of the 11th month after the initial order is made for protective placement for an individual and, except as provided in par. (b), annually thereafter, the county department shall … *[f]ile* a report of the review with the court that ordered the protective placement." (Emphasis added.)  Section 55.18(1)(b) states that "the county is not required to *initiate* a subsequent review of the individual's status under par. (a) until the first day of the 11th month after the date that the court issues a final order after the hearing." (Emphasis added.)  The dispute, thus, is whether the County was required to *file* its petition or *initiate* its review.

Citing to the plain language of WIS. STAT. § 55.18(1)(a), Mason argues that this paragraph applies to all annual reviews of a protective placement.  Citing to the language in § 55.18(1)(b) and to ***Milwaukee County v. C.L.-K.***, No. 2015AP2031, unpublished slip op. (WI App May 24, 2016), the County argues that § 55.18(1)(b) applies after the first review of a protective placement.  We conclude that, regardless of which paragraph applies, Mason forfeited this argument by failing to challenge the circuit court's competency in the circuit court.  Accordingly, we do not further address the parties' arguments on which paragraph applies.  *See* ***Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value.  *See* WIS. STAT. RULE 809.23(3)(b).

omitted). An objection to the court's lack of competency can be forfeited if not timely raised in the circuit court. *See City of Eau Claire v. Booth*, 2016 WI 65, ¶11, 370 Wis. 2d 595, 882 N.W.2d 738; *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶30, 273 Wis. 2d 76, 681 N.W.2d 190 (holding that, generally, "challenges to the circuit court's competency are [forfeited] if not raised in the circuit court").

¶12    Here, any issue regarding the County's untimely petition should have been raised prior to, or during, the annual review hearing. Mason acknowledges that he raised no contemporaneous objection to the circuit court's competency to conduct the review hearing.

¶13    "We will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum." *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995). Furthermore, addressing an issue that an appellant has raised for the first time on appeal constitutes a waste of judicial resources, both in the circuit court and on appeal. *See Green v. Hahn*, 2004 WI App 214, ¶21, 277 Wis. 2d 473, 689 N.W.2d 657. Indeed, by failing to raise his competency argument below, Mason allowed the court to move forward with, and ultimately complete, the due process annual review hearing and rule on the merits of the County's petition. Accordingly, Mason failed to timely assert his right to object to the circuit court's competency. *See Ndina*, 315 Wis. 2d 653 ¶29.

¶14    In reply, Mason cites *Green County Department of Human Services v. H.N.*, 162 Wis. 2d 635, 469 N.W.2d 845 (1991), a case which held that a competency challenge based on noncompliance with statutory time limits cannot be forfeited. *See id.* at 656-58. We first note that *H.N.* is materially distinguishable from the case at hand. *H.N.* dealt with a dispositional order involving two children under WIS. STAT. § 48.435(6). *H.N.*, 162 Wis. 2d at 645.

H.N.'s dispositional order had expired prior to the extension hearing, and the case concerned the circuit court's failure to hold a hearing prior to the expiration of the order. *Id.* at 642-43, 650. Our supreme court explicitly addressed its concern with the court's failure to follow the statutory time limits, noting that if "the circuit court were allowed to conduct a hearing … the dispositional order would have to be 'extended' until the new hearing date," which was "something the statutes do not permit." *Id.* at 650. Thus, the court lacked competency to proceed with the hearing, as the dispositional order had already expired. *Id.* at 654. Conversely, here the timing issue concerned the County's failure to timely file an annual petition for an individual whose order had yet to expire. *See* WIS. STAT. § 55.18(1).

¶15 Further, *H.N.* does not reflect the most recent Wisconsin jurisprudence on the issue of competency. *See State v. Bollig*, 222 Wis. 2d 558, 566, 587 N.W.2d 908 (1998) ("[N]oncompliance with a mandatory statute does not always require a loss of competence."); s*ee also Mikrut*, 273 Wis. 2d 76, ¶27 ("[T]he common-law waiver rule applies to challenges to the circuit court's competency, such that a challenge to the court's competency will be deemed waived if not raised in the circuit court."); *Booth*, 370 Wis. 2d 595, ¶11. Accordingly, we reject Mason's argument that a competency challenge cannot be forfeited.

## II. Sufficiency of the Evidence

¶16 Mason also argues that the County failed to prove, by clear and convincing evidence, each of the four elements required for continued protective

placement under WIS. STAT. § 55.08(1)(a)-(d).[5] Whether the County presented sufficient evidence to support the circuit court's determination that Mason continues to meet the standards for protective placement presents a mixed question of fact and law. *See Walworth County v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377. The court's factual findings at the continued protective placement hearing "will not be overturned unless clearly erroneous." *Coston v. Joseph P.*, 222 Wis. 2d 1, 22, 586 N.W.2d 52 (Ct. App. 1998). "[W]hether the evidence satisfies the legal standard for incompetency and whether the evidence supports protective placement are questions of law, which we review de novo." *Id.* at 23.

¶17 For a circuit court to order a continuation of protective placement, it must find, by clear and convincing evidence, that the following elements are present:

> (a) The individual has a primary need for residential care and custody.
>
> (b) The individual is a minor who is not alleged to have a developmental disability and on whose behalf a petition for

---

[5] Mason also argues that in a protective placement proceeding, an expert witness is "required to establish whether a person is incompetent, suffers from a qualifying mental disorder, and whether the qualifying mental disorder is permanent." To support this assertion, Mason cites *Walworth County v. Therese B.*, 2003 WI App 223, ¶13, 267 Wis. 2d 310, 671 N.W.2d 377, where we stated that, to meet its burden of proof, "the government must present a witness who is qualified by experience, training and independent knowledge of [the individual's] mental health to give a medical or psychological opinion on each of these elements." *Id.* *Therese B.* is distinguishable because it concerned a guardianship proceeding in tandem with an initial protective placement, unlike this case. Guardianship proceedings, which are governed by WIS. STAT. ch. 54, do require medical expert testimony; conversely, continued protective placement proceedings, which are governed by WIS. STAT. ch. 55, do not have any such requirement. *See Douglas County v. J.M.*, No. 2022AP2035, unpublished slip op. ¶¶20-22 (WI App Nov. 28, 2023); *Price County v. C.W.*, No. 2023AP18-FT, unpublished slip op. ¶¶18-20 (WI App Sept. 6, 2023).

guardianship has been submitted, or is an adult who has been determined to be incompetent by a … court.

(c) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.

(d) The individual has a disability that is permanent or likely to be permanent.

WIS. STAT. § 55.08(1); *see* WIS. STAT. §§ 55.10(4)(d), 55.18(3)(e).

¶18 A circuit court is required to make one of three conclusions at the end of an annual review hearing. WIS. STAT. § 55.18(3)(e)1.-3. As relevant here, if the court concludes that the individual continues to meet the requirements for protective placement and is located in the least restrictive setting possible, the court shall order the person to continue being protectively placed in the facility in which the individual resides at the time of the hearing.[6] Sec. 55.18(3)(e)1.

¶19 Here, the circuit court concluded that Mason met the required elements for continued protective placement under WIS. STAT. § 55.18(3)(e)1., including the standards under WIS. STAT. §§ 55.08(1) and 55.12(3)-(5). The court referenced Mason's past primary need for placement and his prior risk of harm to others, and it implied a finding of permanency.

¶20 We first summarize the evidence before the circuit court at the hearing. The court had access to—and could consider—all reports and documents

---

[6] The circuit court's two other possible conclusions under WIS. STAT. § 55.18(3)(e)2. and 3. are "ordering transfer of the individual to … a protective placement that is the least restrictive environment" or "terminat[ing] the protective placement." Sec. 55.18(3)(e)2., 3.

previously admitted into evidence, as well as all facts that had been adjudicated in prior proceedings. *See* WIS. STAT. §§ 55.11(1), 55.12(1), 55.18(1), 902.01; *see also Douglas County v. J.M.*, No. 2022AP2035, unpublished slip op. ¶¶20-22 (WI App Nov. 28, 2023).[7] These reports and documents include Dr. Lee's 2020 comprehensive evaluation, which diagnosed Mason with schizoaffective disorder that "is likely to be permanent," polydipsia, and an unknown substance-induced mild neurocognitive disorder; the 2016-2021 annual reports that stated Mason's mental health had either not improved or had worsened; and the court's order for guardianship, wherein it first found Mason incompetent.

¶21 The circuit court also heard testimony from Rachael Jacobson, who testified regarding Mason's living situation at his secure care facility. Jacobson testified regarding the number of staff members supervising Mason and assisting him with cooking and cleaning. She noted that Mason suffers from polydipsia, experiences daily paranoid or delusional thinking, and has an unspecified diagnosis of a serious and persistent mental illness.[8] Jacobson also testified that she believed Mason was at risk of harming himself, in that, during his protective placement, he had snorted "drywall" and "art mediums." Further, Jacobson stated

---

[7] In *J.M.*, No. 2022AP2035, we concluded that WIS. STAT. §§ 55.11(1), 55.12(1), 55.18(1), and 902.01 permit the circuit court to take judicial notice of reports and documents previously admitted into evidence, particularly when the "documentation [is] submitted in conjunction with the petition under review—such as the required comprehensive evaluation from the initial placement and the required annual written review pursuant to … §§ 55.11(1) and 55.18(1), respectively." *J.M.*, No. 2022AP2035, ¶20.

[8] Jacobson testified that Mason's paranoid thinking included delusions about "being poisoned with different things[,] such as arsenic" or "Ativan," and being "physically harmed," "[s]uch as being raped, molested, shot," or having "his neck broken." She also testified that Mason believed that the FBI, CIA, FCC and other "various different agencies" were working at his mental health facility and were causing him "physical harm and mental anguish."

that Mason was under a water restriction because otherwise he would "continue to consume fluids in excess that could be unsafe for his health."

¶22 Regarding his behavior at the facility, Jacobson stated that Mason can "[s]ometimes" be compliant with staff and with rules and "sometimes not," which occasionally requires "a physical intervention where staff have to go physically … place him in a physical skeletal lock until he deescalates for his and [the staff's] safety." Jacobson then stated that Mason has made threats against the staff, and she recounted an instance wherein a staff member "gently touched [Mason's] shoulder" and Mason responded, "Don't touch me or I'll hit you in your face." Jacobson also recounted an incident where Mason "elope[d]" from the facility, and, upon encountering a staff member, Mason put the staff member "in a headlock and bash[ed] their head into the ground approximately four to five times before" other staff could restrain Mason. Jacobson opined that Mason "has moments" of "lucidity where he can be insightful into his illness, but those moments are fleeting, far and few between, and he typically presents in a state of psychoses." Finally, Jacobson testified,

> I don't feel that [Mason] would make the best safe choices for himself, due to historical things that he's done in his past with—pertaining to drug use and things like that. I also do not believe that the community would be safe, due to his historical behavioral challenges where he has aggressed others and caused injury to them.

¶23 We now turn to whether the evidence before the circuit court established, by clear and convincing evidence, the four elements for continued protective placement under WIS. STAT. § 55.08(1)(a)-(d). Doctor Lee's 2020 comprehensive evaluation stated that Mason has a "[p]rimary need for residential care and custody" because "[Mason] has severe schizoaffective disorder that is likely permanent as well as a cognitive impairment resulting both from prolonged

illicit drug use and mental illness. He requires 24[-]hour supervision as he may become violent and unpredictable." Also in evidence was the 2021 annual report stating that there was no change in Mason's mental health in the last year. Jacobson's testimony—summarized above—further supported a determination that Mason has a primary need for residential care and custody. On this record, we conclude that there is clear and convincing evidence that Mason has primary need for residential care and custody pursuant to § 55.08(1)(a).

¶24 With respect to WIS. STAT. § 55.08(1)(b), it is uncontested that Mason is an adult. Thus, we next focus on whether he has been determined incompetent by a circuit court. Within the record before the court were prior court orders setting forth numerous adjudicative facts regarding Mason's incompetency. *See* WIS. STAT. § 902.01. These orders include the 2015 guardianship order; the 2017 guardianship order; and the 2020 order for continuing protective placement, each of which contained a finding that Mason was incompetent. Thus, we conclude that there is clear and convincing evidence that Mason is an adult who has been determined to be incompetent by a court pursuant to § 55.08(1)(b).

¶25 Regarding the third element, Dr. Lee's evaluation observes that Mason's schizoaffective disorder is "severe"; that Mason's behavior is "frequently violent, demonstrating little or no control over his impulses," which caused him to remain "in the most secure unit since his arrival"; and that Mason is "unable to … make any informed decisions regarding his care and placement." Jacobson's testimony also provides sufficient evidence to support a finding that Mason is so totally incapable of providing for his own care as to create a substantial risk of serious harm to himself or others as a result of his severe schizoaffective disorder and polydipsia, pursuant to WIS. STAT. § 55.08(1)(c). *See supra*, ¶¶21-22.

¶26    Finally, Dr. Lee's evaluation states that Mason's "severe schizoaffective disorder" is "likely to be permanent."   *See* WIS. STAT. § 55.08(1)(d).  This conclusion is consistent with the 2016-2021 annual reports, each of which show either no change or a decline in Mason's mental health.  Thus, the record contains clear and convincing evidence that Mason's disability is permanent or likely to be permanent.  Accordingly, and in sum, we conclude that there was sufficient evidence for the circuit court to conclude that Mason continues to meet the requirements for protective placement under § 55.08(1).

*By the Court.*—Order affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.